MARIE LEMIEUX *vs*. LAURA S. HEATH.

Androscoggin.    Opinion February 21, 1917.

*Negligence.    Verdict.    Automobiles.*

Upon the evidence, the court is of opinion that the verdict for the plaintiff can-
not be sustained.   The plaintiff's contentions are so overwhelmed not only
by the spoken words of witnesses, but by the mute, but convincing, evidence
of the cars which were in collision, that no other reasonable conclusion can be
reached than that the verdict was erroneous.

Action on the case in which the plaintiff seeks to recover damages from the defendant for the negligence of the defendant's servant in operating an automobile.   Defendant filed plea of general issue and also brief statement, setting forth   (1).   That the automobile in which the plaintiff was riding, at the time and place alleged in her said writ and declaration, was not registered as required by law. (2).   That the driver of the automobile in which the plaintiff was riding, at the time and place alleged in her said writ and declaration, was not licensed as required by law.   (3).   That the driver of the automobile in which the plaintiff was riding, at the time and place

alleged in her said writ and declaration, was not riding with or accompanied by a licensed operator for the purpose of becoming familiar with the use and handling of said automobile, preparatory to taking out a license for driving. (4). That at the time and place of the accident alleged in the plaintiff's declaration, the defendant's automobile was driven and operated by the defendant's son Herbert M. Heath, who was then and there a duly licensed operator of motor vehicles, and was operating said automobile in a careful and prudent manner on his own business, and was not acting as the servant and agent of the defendant. (5). That at the time and place of the injury alleged in the plaintiff's declaration, the defendant's said car was also occupied by her said other son, Gardner K. Heath, who was then and there a duly licensed operator of motor vehicles, but that he was not acting as the servant or agent of the defendant. (6). That at the time and place alleged in the plaintiff's declaration, neither the said Herbert M. Heath or Gardner K. Heath were acting within the scope of their employment as the servant or agent of the defendant. (7). That at the time and place alleged in the plaintiff's declaration, the plaintiff's injuries were not received by reason of any want of due care on the part of the defendant or of the said Herbert M. Heath or Gardner K. Heath, but that the plaintiff's injuries were received solely through the want of care of one Bishop, who was then and there operating the automobile in which the plaintiff was riding at the time of receiving said injuries. Verdict for plaintiff in the sum of $575.61. Defendant filed motion for new trial and also exceptions to certain rulings of presiding Justice. Motion sustained.

Case stated in opinion.

*Joseph G. Chabot, and Frank A. Morey,* for plaintiff.

*G. W. Gower,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HANSON, MADIGAN, JJ.

SAVAGE, C. J. Action on the case to recover for injuries sustained by the plaintiff in a collision between an automobile in which she was riding as a passenger, and an automobile owned by the defendant in which her two sons were riding, one of them driving the car. The plaintiff recovered a verdict, and the case comes before us on the defendant's motion and exceptions.

The story of the plaintiff and her witnesses is this. She with her husband, her son, a child of twelve years, one Bouchard, and a driver, five in all, were traveling from Lewiston to Augusta in a Chalmers car weighing about 4800 pounds. At a place called "Morang's crossing," where the electric railroad from Augusta to Winthrop crosses the highway, they saw the defendant's car, two hundred feet away, approaching them from Augusta at a very high rate of speed, estimated at 50 miles an hour. The car in which the plaintiff was riding, which we will call the Lemieux car, was then admittedly on its right hand side of the road, the south side. The plaintiff claims that the Heath car was on the same side of the road as it approached. The traveled part of the road was 22 feet wide. It was macadamized, with narrow strips of gravel at the shoulders. Seeing that there was danger of a collision, the driver of the Lemieux car slowed down to a speed of 8 or 9 miles an hour. What happened then is more fully described by the plaintiff's husband than by any other of her witnesses. Mr. Lemieux, illustrating at the blackboard, testified:— "They were coming right here; I was coming on the same side, and when they came pretty snug to us they see us and they swung right around to clear us and they got hold of this left hind wheel and swung end for end and we tipped in the ditch. They landed about 50 or 55 feet right in the ditch, or in the field there." The ditch referred to by the witness is the one on the north side of the road. Mr. Bouchard says that the Heath car struck the forward left wheel of the Lemieux car. The plaintiff was thrown from the car and struck in the north ditch. The little boy landed in the field some feet beyond. Mr. Lemieux, when he recovered consciousness, found himself in the middle of the road. A spot of blood located Mr. Bouchard's landing place at a point in the road about 50 feet easterly from the Lemieux car as it rested finally, and 3 or 4 feet from the north edge of the road. The driver does not appear to have been hurt. The plaintiff and her other witnesses say that they felt no jolt at the crossing.

After the collision, both cars were in the north ditch, or substantially so. The Heath car was lying diagonally to the road, right side up, and fronting westerly. The Lemieux car was also lying diagonally to the road, but bottom side up, and turned end for end, fronting westerly towards Lewiston. The front end of the Lemieux car and the rear end of the Heath car were five and one half feet apart. From

the Heath car to the railroad track was about 70 feet. The following sketch gives the situation approximately, as shown by photographs taken before the cars were removed.

On the other hand, the sons of the defendant testify that they were traveling on their right hand side of the road at an estimated speed of 10 or 12 miles an hour. They had a Buick car, which Mr. Lemieux testified weighed 3800 pounds. They say they saw the Lemieux car approaching on its own side of the road at a very rapid speed, that when it crossed the railroad track which is on a curve, the outer rail being $4\frac{5}{8}$ inches higher than the inner one, the car bounced so that the occupants of the tonneau were thrown somewhat into the air, that the car then veered a little to the right for a few feet at first, and then turned sharply to the left across the road till it struck the left mud guard or left forward wheel of the Heath car and grazed along its left side, pushing it into the ditch, and being itself overturned, and turned end for end. The defendant's theory, based upon the description of the affair given by her sons, and upon some testimony to be noticed later, concerning the apparent direction of the wheel tracks, is that when the Lemieux car got a jolt crossing the railroad track the driver temporarily lost control of the car and that the collision occurred before he could get control again; or that in the emergency an unfortunate handling of the wheel by the driver turned it towards the Heath car. It all took place in a very few seconds.

It is evident that practically the correct decision of the case will depend upon whether the jury were warranted in finding, as they must have done, that the collision occurred upon the south side of the road where the Lemieux car had a right to be. If the Heath car was on its own side of the road, the defendant clearly is not liable. But if the Heath car was on the south side of the road, as the plaintiff claims, the verdict is sustainable.

The plaintiff, her husband, and Bouchard all say that the Heath car was on its left hand side of the road, the south side. The two Heaths say that they were on their right hand side of the road, the north side. Two apparently disinterested witnesses who say that they were two or three hundred feet away testify that they heard the crash of the collision, and looking almost instantly saw the cars then on the north side of the road. One says the Lemieux car was then tipping over endways into the ditch.

The condition of the cars after the collision may throw a little light on the question of the relative positions of the cars when they collided. Mr. Lemieux says that his left front wheel, tire and windshield were broken, the radiator bent and broken, the left front spring broken, and the right bent. A witness called by the plaintiff says that the front end of the Lemieux car, the radiator and axle were damaged, that the radiator and engine were crushed in on the left hand side, that the left front wheel was off, the left mud guard ripped, and the left side of the car torn up. As to the Heath car, the testimony is that the windshield was not broken, nor were the headlights. The radiator was in perfect shape. The left front tire was off and the demountable rim bent, but the wheel was not damaged. Both axles on the left were bent back. The left mud guard was crushed, the left running board gone, the steering wheel broken and column bent, and the gasoline tank punctured. And the left hand frame of the car was bent in. From all this it is evident that, on whichever side of the road they were, the left hand front end of the Lemieux car came in contact first with the mud guard or left front wheel of the Heath car, clear of the windshield, headlights and radiator, and scraped along the entire left side of the car. This is consistent with the defendant's contention in regard to the manner of the collision. It is not entirely inconsistent with Mr. Lemieux's testimony that the Heath car had turned from the south side of the road towards the middle to avoid a collision. In either case, one car was crossing the road while the other was proceeding straight along.

But more important than any of the evidence so far referred to in this connection is the movement of the cars from the point of collision to their resting places in the ditch. According to the testimony for the plaintiff the Lemieux car was proceeding on the south side of the road at a moderate speed, 8 or 9 miles an hour. The car with its occupants weighed probably 5400 or 5500 pounds. In this situation

it was met and struck on the left front wheel of the Heath car weighing with its occupants about 4100 pounds proceeding as the plaintiff claims at a very high rate of speed, estimated at 50 miles an hour. Of course, all the figures relating to speed are estimates and may be considered as minimized in the one case, or exaggerated in the other. But the contention is that the Lemieux car was going at a moderate or slow speed for an automobile, and the Heath car very fast. The effect of the impact of the lighter and more rapidly traveling car upon the heavier slow one was not to stop the latter, nor to crowd it towards its own side of the road, nor to turn it about in the road. The momentum of the Lemieux car was such that it kept on, cleared the Heath car, for it fell beyond it, and after turning end for end, and bottom side up in its movements it landed in the ditch on the opposite side of the road from where it started. In the meantime the Heath car had been pushed or thrown from south of the middle of the road into the north ditch, where it lay right side up, and headed in the same direction in which it had been going.

The movements of the Lemieux car speak more unerringly than can the lips of any witness. The tremendous momentum of the car shows beyond all question that it was traveling at a high rate of speed. And even so, if as is claimed the car was traveling straight forward on the south side of the road, and was struck on the left front wheel by the lighter Heath car crossing diagonally in front, it is difficult even to imagine how it could have been propelled to the opposite side of the road, and in its passage turned end for end and upside down. It savors of the impossible. It is so improbable as to be almost or quite incredible.

But this is not all. Several reputable and disinterested witnesses who visited the scene of the collision within about an hour after it occurred say in substance that they saw an automobile wheel track on the south side of the road a short distance west of the electric railroad crossing, that for a few feet easterly of the crossing it disappeared, began again a well defined indented track, proceeded along nearly upon the line between the grass and gravel, and then turned sharply to the left across the gravel at the side in the direction of the cars as they stopped, until it was lost on the macadam surface towards the middle. Another witness who seems to have arrived there within twenty minutes says that at that time the track was discernable

across the macadam. To a reasoning mind, the evidence can leave little or no doubt that the track seen by the witness was made by the Lemieux car. If this was so, it corroborates in a most material manner the defendant's sons who declare that the collision occurred on the north side of the road, and that they were run into by the Lemieux car.

There are some minor features which point in the same direction, but we need not recount them. Upon the whole, we are of opinion that the verdict is plainly contrary to the evidence. The plaintiff's contentions are so overwhelmed not only by the spoken words of witnesses, but by the mute, but convincing, evidence of the cars themselves, that no other reasonable conclusion can be reached than that the verdict was erroneous.

*Motion sustained.*