396 P.2d 872

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Herschel LeRoy WINTERS, Defendant and Appellant.**

**No. 10120.**

Supreme Court of Utah.

Nov. 30, 1964.

---

3. 68 Colo. 527, 190 P. 526, 10 A.L.R. 1492 (1920).
4. See also 6 A.L.R.2d 1108, § 13.

J. Harlan Burns, Cedar City, for appellant.

A. Pratt Kesler, Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice.

Defendant Herschel LeRoy Winters appeals from his conviction of the crime of unlawful possession of a narcotic drug in violation of the Uniform Narcotic Drug Act of the State of Utah.[1]

On September 1, 1963, the Sheriff and County Attorney of Washington County and the District Attorney of the Fifth Judicial District, picked up defendant Winters at the Las Vegas, Nevada, jail, where he was being held by Nevada peace officers, and physically transported him, handcuffed, to St. George, Utah, to answer to the then pending charges of burglary.

Upon arrival at St. George defendant was placed in cell No. 2 of the Washington County jail. A few days later a woman, described at the trial as the defendant's wife, was arrested on suspicion of using narcotics. Defendant was moved from cell No. 2 and was placed in cell No. 3 in order that the woman could be placed in cell No. 2.

At the trial the Sheriff testified that shortly after the woman had been placed in cell No. 2 he heard the defendant tell the woman to "get the stuff out of the mattress out of the bed behind the door" and flush it down the toilet before the officers find it. The Deputy Sheriff testified that he heard the defendant say to the woman in cell No. 2, "you have got to find it * * * it is up toward the end of the mattress, and it is wrapped in a white cloth, and you have got to find it for me, Baby. You have got to get it before they find it."

Thereafter, the woman was removed from cell No. 2, and the cell was searched. The searchers found a syringe and a rubber vial containing a white powder. Some of the powder was removed from the vial and sent to the state chemist's office.

At the trial the state chemist testified that the powder sent to him was tested and results showed that the powder contained heroin, a derivative of opium. However, the state chemist stated that he did not know how much heroin the powder contained.

Sometime after cell No. 2 had been searched and the syringe and vial filled with powder had been found, the defendant became sick and said he needed a doctor. Upon being questioned defendant stated that the reason he was sick was because he was addicted to dope and needed a shot.

1. Title 58, Chapter 13a, U.C.A.1953.

In response to a question asked by the county attorney as to where he had obtained the "stuff," the defendant said he obtained the powder in Mexico, that "anybody can get it there," and that he brought it up in his mouth.

The jury returned a verdict of guilty.

■ The defendant first contends that there was insufficient evidence of possession to support the jury's verdict of guilty.

Before a jury verdict may be set aside "it must appear that the evidence was so inconclusive or unsatisfactory that reasonable minds acting fairly upon it *must* have entertained reasonable doubt that defendant committed the crime." [2] It is not sufficient that the jury *may* have entertained reasonable doubt as to defendant's guilt.[3] Applying the above quoted test, and viewing the evidence in the light most favorable to the party who prevailed in the trial court,[4] we cannot say that the jury *must* have entertained reasonable doubt that defendant unlawfully possessed narcotics.

■ In a prosecution for unlawful possession of narcotics the people must prove that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character.[5] Dominion and control by the defendant over the narcotic does not mean that the narcotic needs to be found on the person of the accused,[6] nor does it mean that the defendant must have had sole and exclusive possession of the narcotic.[7] After reviewing the facts of this case, we cannot say that the jury must have entertained reasonable doubt that defendant exercised dominion and control over the narcotic drug. Knowledge of the presence and narcotic character of the drug may be shown by the conduct and behavior of the defendant.[8] The jury was justified in finding that defendant had knowledge of the presence and narcotic character of the drug.

■ The second contention by the defendant that the State failed to prove that the substance found was a narcotic within the meaning of the statute has no merit. Uncontradicted evidence showed that there was a quantity of heroin in the powder found in the rubber vial. Both the statute,[9] and testimony from the state chemist confirm the fact that heroin is a derivative of opium and is a narcotic drug. Even though several courts have held that *no particular*

2. State v. Sullivan, 6 Utah 2d 110, 114, 307 P.2d 212, 215 (1957).
3. State v. Danks, 10 Utah 2d 162, 164, 350 P.2d 146 (1960).
4. State v. Ward, 10 Utah 2d 34, 39–40, 347 P.2d 865 (1959).
5. People v. Melendez, Cal.App., 37 Cal. Rptr. 126, 128–129 (1964).
6. State v. Hunt, 91 Ariz. 149, 370 P.2d 642, 645 (1962).
7. Williams v. People, 136 Colo. 164, 315 P.2d 189, 191 (1957).
8. People v. Walker, 121 Cal.App.2d 173, 262 P.2d 640, 641 (1953).
9. 58–13a–1 (12) and (15).

*quantity* of narcotics is necessary to sustain a conviction for possession of a narcotic drug [10] we need not determine the question at this time. The defendant's actions and words, along with the testimony of the state chemist were sufficient to have justified the jury in concluding that the substance defendant possessed was a narcotic drug within the meaning of the statute. Even in a state where the narcotic possessed must be of such quantity as is capable of being applied to the use commonly made thereof,[11] the court held that where the defendant had made a written confession that he had brought marijuana from Mexico it was not necessary to allege that the quantity possessed was sufficient to be applied to the use commonly made thereof.[12] The jury was allowed to base its decision on the confession and use the confession in determining that there was a sufficient quantity of marijuana present to convict for illegal possession of marijuana. In the case before us we do not have a written confession, but we do have evidence of what the defendant did in trying to get rid of the syringe and vial filled with powder, and we have evidence of what the defendant told certain people, e. g., that he obtained the powder in Mexico, that any-

body can get it there, that he brought it up in his mouth, and that he needed a shot as he was addicted to dope. We cannot say that the jury must have entertained a reasonable doubt that defendant did not possess a narcotic drug.

In following the line of reasoning discussed just previously, the third contention that the trial court erred in refusing to instruct the jury that, in order to convict, the amount of narcotic drug possessed must be found to be useable has no merit. The determinative test is possession [13] of a narcotic drug, and not useability of a narcotic drug.

The fourth contention that the trial court erred in instructing the jury that the burden of proof of lawfulness of possession of any narcotic drug was upon the defendant has no merit. In instructing the jury, the district judge said that the State had to prove that the defendant did possess or have in his control a narcotic drug, that such possession was unlawful, and that such possession was with knowledge both of the possession and of the character of such narcotic drug; and that in determining whether or not possession was unlawful, all possession, except as provided by law, is un-

10. People v. Mickens, 148 Colo. 237, 365 P.2d 679 (1961). Peachie v. State, 203 Md. 239, 100 A. 1 (1953). See also, People v. Aguilar, Cal.App., 35 Cal.Rptr. 516 (1964) which was discussed in People v. Melendez, Cal.App., 37 Cal.Rptr. 126 (1964); 91 A.L.R.2d 829.

11. Pelham v. State, 164 Tex.Cr. 226, 298 S.W.2d 171 (1957).
12. Locke v. State, 169 Tex.Cr. 361, 334 S. W.2d 292 (1960).
13. 58–13a–2, U.C.A.1953: "It shall be unlawful for any person to * * * possess * * * any narcotic drug * * *."

lawful and the burden of showing lawfulness of possession is upon the possessor.[14]

■ The statute itself makes it unlawful to possess a narcotic drug unless authorized by law, and the burden of showing any exceptions, excuse, proviso, or exemption provided for by law, is upon the defendant.[15] The burden is upon the person accused of illegal possession of a narcotic drug to prove that his possession is lawful under the statute.[16]

■■ Defendant's last contention is that the trial court erred in denying defendant's motion to quash made on the ground that the State failed to comply with the court's order to supply a bill of particulars. On November 22, 1963, defendant demanded a bill of particulars and the names of the State's witnesses. The court ordered the district attorney to provide a bill "forthwith." The bill, along with a list of the State's witnesses, was furnished on December 9, 1963, one day before trial began. Defendant made a motion to quash.[17]

The purpose of a bill of particulars is to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense; the bill need not be so detailed as to state matters of evidence.[18]

The bill of particulars sufficiently informed defendant of the particulars of the offense. A motion to quash was correctly denied.

Affirmed.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

14. Jury instruction No. 14.
15. 58–13a–42, U.C.A.1953.
16. State v. Navaro, 83 Utah 6, 17–18, 26 P.2d 955 (1933). See also, People v. Marschalk, 206 Cal.App.2d 346, 23 Cal. Rptr. 743, 745, (1962) where the court said, "the privilege of possession of a narcotic must be shown affirmatively by the defendant."
17. 77–23–3: "A motion to quash the information or indictment shall be available only on one or more of the following grounds. In the case of: (1) Either an information or indictment: (b) That the court has ordered a bill of particulars under the provisions of section 77–21–9 and the prosecuting attorney fails to furnish a sufficient bill." (Emphasis added.)
18. State v. Jameson, 103 Utah 129, 132–133, 134 P.2d 173 (1943). See also, 77–21–9 U.C.A.1953.