Joe SEGURA, Appellant,

v.

Wayne K. PATTERSON, Appellee.

No. 9998.

United States Court of Appeals Tenth Circuit.

Oct. 1, 1968.

Rehearing Denied Jan. 8, 1969.

Donald P. MacDonald, Boulder, Colo. (L. Thomas Woodford, Boulder, Colo., on the brief), for appellant.

John P. Moore, Asst. Atty. Gen. (Duke W. Dunbar, Atty. Gen., and Frank E. Hickey, Deputy Atty. Gen., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

On March 7, 1963, appellant was convicted of the first degree murder of his son and sentenced to death in a jury trial held in Pueblo County District Court, Pueblo, Colorado. This conviction was appealed to the Colorado Supreme Court and affirmed by that court in Segura v. People, 159 Colo. 371, 412 P.2d 227. On June 8, 1967, appellant filed a motion for post-conviction relief under Colo. R.Crim.P. 35 which was denied on June 29, 1967. Review was sought in the Colorado Supreme Court which again affirmed the trial court in Segura v. People, 431 P.2d 768. A petition for rehearing was also denied. Appellant

then filed in the court below a petition for relief under 28 U.S.C. § 2254. After holding an evidentiary hearing the court denied the writ and dismissed the petition from which this appeal follows.

In the trial court, appellant asserted the following separate grounds for relief: that the state trial court's refusal to grant a continuance of the hearing upon the post-conviction relief motion and the refusal of the Colorado Supreme Court to grant an indefinite stay of execution, was a denial of due process, effective assistance of counsel and equal protection of the law; that the single-verdict procedure is repugnant to the Fourteenth Amendment because it allowed the punishment to be determined by the same jury determining guilt, it caused the defendant to choose between allocution and his privilege against self-incrimination, and because the jury was not furnished with sufficient standards to properly assess the appropriate penalty; that the death sentence is a cruel and unusual punishment; and that the jury was improperly qualified by excluding jurors having conscientious scruples against the death penalty. The lower court having decided adversely to the appellant on every point, he seeks a reversal by contending: (1) that the exclusion from the jury of veniremen with conscientious scruples against the death penalty violates due process; (2) that the single-verdict procedure is repugnant to the Fifth and Fourteenth Amendment; (3) that the disallowance of a sentencing hearing for those pleading not guilty to a capital offense while providing such for all other offenders is violative of equal protection; (4) allowing the jury unfettered discretion in determining the appropriate penalty is violative of due process; and (5) the death penalty constitutes a cruel and unusual punishment.

Subsequent to the decision of the court below but prior to oral argument before this court, the Supreme Court of the United States decided Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This case clearly controls the disposition of the contention of appellant that jurors evincing scruples against the death penalty were excluded in violation of due process. It was established in Witherspoon that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." [1] In a footnote to the above-quoted holding the Court indicated that although a venireman might entertain scruples in opposition to capital punishment in order to be excused for cause it must be shown that he is unwilling even to consider all of the penalties provided by state law and is irrevocably committed to vote against the death penalty regardless of the facts of any particular case.

"If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out even if applicable statutory or case law in the relevant jurisdiction would appear to support only a narrower ground of exclusion." [2] Accordingly, the relevant consideration in any case is not what the formal law embodied in statute or judicial decision may be, but rather, whether from an examination of the voir dire of the veniremen it can be said that the proper test has been applied. In the case at bar, three veniremen were excused for cause based upon their responses to questions relating to potential personal opposition to the death penalty. The first of the three veniremen who admitted to "conscientious scruples against the imposition of the death penalty in a proper case" was thereafter asked whether he could follow the court's instruction and impose the penalty at either death or life imprisonment. He replied: "I don't think I can bring in the death penalty, Sir." The second prospective juror after admitting

1. 391 U.S. at 522, 88 S.Ct. at 1777.

2. 391 U.S. at 522, 88 S.Ct. at 1777.

to opposition to the death penalty was asked: "You feel it would be impossible to overcome this attitude that you have toward the death penalty or capital punishment?" "Toward just that, yes." The third and last "scrupled juror" was asked: "Do you have any conscientious scruples against the imposition of the death penalty in a proper case?" "Yes, I do." "Are you opposed to it as such?" "Yes."

■ From the examination of the veniremen it thus appears that the jurors were not being excused merely for conscientious scruples but because they indicated that such scruples would prevent imposition of the death penalty in any case. The excused juror either would be unable to follow court instructions, felt that it was impossible to overcome his scruples, or was opposed to the death penalty as such. Admittedly it would be open to this court to engage in a semantical inquiry as to the exact meaning of each question and answer relating to excused jurors. Nonetheless this court fully comprehends that the critical question is not how the exact questions may be interpreted by courts and commentators. "What matters is how they might be understood—or misunderstood—by prospective jurors." [3] Here there was more than a general question as to the presence of reservations or scruples. There was an attempt to separate "those who would never vote for the ultimate penalty from those who would reserve it for the direst cases." [4] It seems apparent from the examination conducted that the prospective jurors who were excused were aware that they were dismissed because they would not even consider returning a verdict of death and not merely because they, as most civilized men, felt a reluctance to impose capital punish-

ment.[5] The jury was thus not a stacked deck and this contention must fail.

On the proposition that the single-verdict procedure is violative of due process, it is urged that under this procedure there is presented no opportunity for allocution, i. e., to present evidence in mitigation of the sentence. Inasmuch as the same jury is charged with the responsibility of determining both guilt and punishment, the accused is confronted with a difficult choice between introducing mitigating evidence which may be prejudicial to the determination of guilt, or on the other hand, of foregoing the right of allocution in order to exercise his privilege against self-incrimination. It is further contended that the rules of evidence prohibit much evidence that is irrelevant as to guilt but relevant as to punishment, thereby preventing the full exercise of the constitutional right of allocution. In sum, it is asserted that the Constitution requires a two-part trial on the issues of guilt and punishment.

■ The first objection to the single-verdict procedure is that it prohibits the introduction of mitigating evidence of a type usually included in a pre-sentence report to a judge or presented to a jury in a two-part trial. Evidence of a mitigating nature cannot be introduced either because of the rules of evidence or because to do so would allow the prosecution to counter with evidence impeaching the credibility of the accused. We have not been referred to a single jurisdiction that has held this to be a valid constitutional basis for requiring a two-stage trial. Indeed, the right to a pre-sentence report or other means of allocution has not risen to the dignity of a constitutional requirement.[6] There can

3. 391 U.S. at 516, 88 S.Ct. at 1774.

4. Id.

5. It can be assumed that in the future cautious counsel will take greater pains to utilize the exact wording of Witherspoon in ascertaining those whose conscience prohibits the imposition of the death penalty and thereby irrevocably commits them

to vote against such penalty irrespective of the evidence adduced during the course of the trial.

6. The failure of the trial court to allow allocution "is neither jurisdictional nor constitutional." Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

not be said to exist a right to introduce mitigating evidence when as pronounced by the Supreme Court: "We held in Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, that the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." [7] If a judge need not allow allocution as a constitutional right when determining the penalty, it follows that there is likewise no such right to so influence a jury. Having no constitutional right to allocution, appellant cannot have sustained the imposition of "an impermissible burden upon the assertion of a constitutional right" [8] that is necessary before the lack of an opportunity for allocution can be held to require a reversal of the dismissal of the petition below.

 It is next asserted with regard to the single-verdict procedure that in forcing a choice between taking the stand in an attempt to mitigate or declining to testify in the hope of gaining an acquittal, the appellant was thereby deprived of his right to remain silent. One answer to this contention is that mitigating evidence could be introduced through other witnesses. Nevertheless, it is quite conceivable, as indeed it was shown below, that the accused may be the only available source of material mitigating information. Therefore there is a strong compulsion to take the stand. This compulsion does not derive from any coercion of the State, instead it arises from the desire of the accused to act in his own enlightened self-interest. He is compelled to testify only in the sense that it may be to his advantage to do so. The choice is his embracing no more substantial "chilling effects" in a single-verdict situation than it does in any other instance. It is always the case that in exercising the constitutional right to remain silent, the individual is forced to forego his opportunity to personally appeal to the jury. Whether such an appeal relates to the determination of guilt or punishment or both, it cannot be denied that the inducement not to remain silent and thus to forego a specific constitutional right does not arise from any unnecessary burden imposed by the State. We conclude that the single-verdict procedure does not "needlessly chill the exercise of basic constitutional rights." [9]

 As a further objection to the single-verdict procedure appellant urges that the one-stage trial is so blatantly unfair as to render it repugnant to the general fairness requirements of due process. The right to a two-part trial in a clearly analogous situation was deemed not to be compelled by the Fourteenth Amendment.[10] The Supreme Court stated: "Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure." [11]

It is also advanced in regard to the Colorado system of jury sentencing that it is based upon an arbitrary classification thereby offending the equal protection guarantees of the Fourteenth Amendment. Appellant points to the fact that those who are found guilty of lesser offenses, as well as those pleading guilty to first degree murder, are permitted a hearing solely for the purpose of assessing the proper penalty while

7. Specht v. Patterson, 386 U.S. 605, 606, 87 S.Ct. 1209, 1210, 18 L.Ed.2d 326 (1967).

8. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

9. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); see, United States v. Curry, 358 F.2d 904 (2d Cir. 1966).

10. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

11. 385 U.S. at 568, 87 S.Ct. at 656. We join in the statement of Mr. Justice Stewart, concurring, that if we were free to impose upon state criminal courts "[our] own notions of enlightened policy" the disposition of this contention might well be different.

those who plead not guilty to first degree murder are denied a separate sentencing hearing. The issue thus becomes whether these separate classifications "rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed * * *. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose * * *."[12]

We agree with the other Circuits that have passed upon this question. In both the one-part and the two-part trial the accused is actually permitted to present mitigating evidence. Although there are judicial administrative differences between the systems, we do not believe that requiring a defendant who pleads not guilty to present his mitigating evidence to the same jury determining guilt is the kind of arbitrary classification which the equal protection clause forbids.[13]

The final assertion relative to the Colorado procedure of jury sentencing is that it is violative of due process because the jury is given unfettered discretion in choosing between the death penalty and life imprisonment and in reaching the life and death decision a Colorado jury proceeds without guides or standards of any kind. Such unreviewable discretion in determining the sanction to be imposed in a first degree murder situation has long been accepted in most jurisdictions tracing their origin to the common law.[14] Although the Supreme Court has not spoken directly on this matter,[15] the unmistakable adulation bestowed upon this jury function in Witherspoon, supra, leaves little doubt as to the ultimate position of the Court. "Guided by neither rule nor standard, 'free to select or reject as it [sees] fit,' a jury that must choose between life imprisonment and capital punishment can do little more—and must do nothing less—than express the conscience of the community on the ultimate question of life or death."[16] This court has discovered not one successful attack upon the discretion allowed the jury in this context. Perhaps this is because it is neither desirable nor feasible to postulate a specific standard to so control the jury. It is axiomatic that the line between contemporary community values and the penal system is filled by the jury's being allowed to be reflective of prevailing social thought. To assert that the adoption of rigid guidelines seeking to control the jury in this respect, thereby substituting merciless standards for present day flexibility, is compelled by due process is clearly untenable.[17]

As to the final point appellant urges that capital punishment constitutes a cruel and unusual punishment. This

---

12. McLaughlin v. State of Florida, 379 U.S. 184, 190–191, 85 S.Ct. 283, 287–288, 13 L.Ed.2d 222 (1964).

13. In re Ernst's Petition, 294 F.2d 556, 561 (3d Cir. 1961) ; United States ex rel. Witherspoon v. Ogilvie, 337 F.2d 427, 431 (7th Cir. 1964).

14. See the concurring opinion of Mr. Justice Frankfurter in Andres v. United States, 333 U.S. 740, 758–763, 68 S.Ct. 880, 92 L.Ed. 1055 (1948).

15. Appellant refers to Giaccio v. State of Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), as authority for the proposition that the jury cannot be allowed to make the life or death decision. Giaccio is so clearly distinguishable on the facts and underlying reasoning as to render the decision there inapposite. The Court in determining that a state statute allowing the jury to tax costs to exonerated misdemeanor defendants was void for vagueness, based its decision upon the absence of standards by which the public could govern its conduct. "[I]t is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." Id. at 402, 86 S.Ct. at 520. Suffice it to say that there can be little genuine doubt as to the type of conduct proscribed by the statute here in issue.

16. 391 U.S. at 519, 88 S.Ct. at 1775.

17. In re Ernst's Petition, 294 F.2d 556 (3d Cir. 1961).

argument is essentially premised upon the innate finality adhering to such a penalty. Nonetheless, in Trop v. Dulles, 356 U.S. 86, 99, 78 S.Ct. 590, 597, 2 L.Ed. 2d 630 (1958) the Court declared: "Whatever the arguments may be against capital punishment, both on moral grounds and in terms of accomplishing the purposes of punishment—and they are forceful—the death penalty has been employed throughout our history, and, in a day when it is still widely accepted, it cannot be said to violate the constitutional concept of cruelty." Accordingly, it is so well established through a series of decisions of the Supreme Court [18] that any further elaboration must come from that source.

Affirmed.

---

18. State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); McElvaine v. Brush, 142 U.S. 155, 12 S.Ct. 156, 35 L.Ed. 971 (1891); Ex Parte Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); Ex Parte Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1889); Wilkerson v. State of Utah, 99 U.S. 130, 25 L.Ed. 345 (1878). See e. g., United States v. Hendrick, 330 F.2d 263 (3d Cir. 1964); Ralph v. Pepersack, 335 F.2d 128 (4th Cir. 1964), cert. den. 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811; Harris v. Stephens, 361 F.2d 888 (8th Cir. 1966), cert. den. 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113; Jackson v. Dickson, 325 F.2d 573 (9th Cir. 1963).