461 P.2d 297

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Walter Bernard KELBACH and Myron Darl Lance, Defendants and Appellants.**

**No. 10990.**

Supreme Court of Utah.

Nov. 10, 1969.

Jimi Mitsunaga, Salt Lake City, for defendants and appellants.

Vernon B. Romney, Atty. Gen., Salt Lake City, for plaintiff and respondent.

CALLISTER, Justice:

Defendants were convicted by a jury of murder in the first degree, without a recommendation for life imprisonment, and were sentenced to death. On appeal, defendants contend that their convictions should be set aside, or, in the alternative, they should be awarded a new trial on the ground that the trial court deprived them of their constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

On December 21, 1966, defendants entered Lally's Tavern, located in Salt Lake City, at approximately nine o'clock in the evening. Defendant Kelbach had previously been a patron of the tavern and had entered a bowling game contest; in connection therewith he had signed his name on an entry blank. Kelbach inquired as to the results of the contest, and it was determined that he had won; he was awarded the prize, a tape recorder, which the defendants proceeded to play. Defendant Lance greeted an acquaintance of his, patron, Charles Gene Haney, and introduced him to Kelbach. Haney offered to sell Kelbach some additional tapes for the new recorder; they arranged for Haney to leave the tapes at the tavern the following evening, and Haney was given a paper with Kelbach's name upon it in connection with this transaction. Defendants thereafter departed.

About eleven o'clock the same evening, defendants returned to the tavern. Kelbach went to the pin ball machine at the back of the establishment. A few minutes later, patron, Haney, heard a shot and observed Kelbach with a gun in his hand. At about the same time, Lance shot patron, James Sizemore, in the head and then turned to bartender, Kenneth Lloyd Graven, and said: "This is a stick-up." Proprietor, Graven, placed the cash drawer on the bar, and Lance took the money therein. Subsequently a fusillade of shots resounded through the tavern. Bartender, Graven, was miraculously missed, although he sustained powder burns on his face. Patron, Haney, played dead. Patrons, Fred William Lillie and Beverly Mace died of gunshot wounds; patron, Verl Meads, was wounded. Defendants fled.

Defendants were arrested at a roadblock a few hours later. They were identified in a police lineup by patron, Haney, and

proprietor, Graven, and were charged with the murders of patrons, Sizemore and Lillie.

Defendants contend that the single-verdict procedure in Utah, in which the jury simultaneously tries the issues of guilt and punishment in capital cases, is fundamentally unfair and violates due process of law. They assert that this procedure compels a defendant to elect between his right of allocution and his privilege against self-incrimination. If a defendant testifies, he is subject to cross-examination and impeachment. If he asserts his privilege, he has no opportunity to present evidence in mitigation of sentence.

Defendants' assertion that the single-verdict procedure is in violation of the Fourteenth Amendment is premised on the assumption that both the privilege against self-incrimination and the right of allocution are constitutionally protected rights, and the Utah procedure compels the criminal defendant to waive one of them.

■■ The failure of the trial court to ask a defendant, represented by an attorney, whether he has anything to say before sentence is imposed (allocution), does not in itself constitute constitutional error.[1]

The Due Process Clause of the Fourteenth Amendment does not require a judge to have hearings and to give a convicted person an opportunity to participate therein prior to the determination of the sentence to be imposed.[2]

■ In Segura v. Patterson,[3] the identical argument asserted herein was presented; the court observed that if a judge need not allow allocution as a constitutional right when determining the penalty, it follows that there is likewise no such right to so influence the jury. Furthermore, if a defendant has no constitutional right to allocution, he cannot have sustained the imposition of "an impermissible burden" upon the assertion of a constitutional right. There is nothing in the single-verdict procedure whereby the State coerces the defendant to waive his privilege against self-incrimination. He is compelled to testify only in the sense that it may be to his advantage; this inducement to forego his right to remain silent does not arise from any unnecessary burden imposed by the State.

Defendants urge that both the imposition of the death penalty and the manner in which it is executed constitute a cruel and unusual punishment within the Eighth and Fourteenth Amendments.

1. Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

2. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949);

Specht v. Patterson, 386 U.S. 605, 606, 87 S.Ct. 1209, 1210, 18 L.Ed.2d 326 (1967).

3. (C.A. 10th, 1968) 402 F.2d 249, 252.

■ Capital punishment does not violate the constitutional concept of cruelty.[4]

■ Defendants claim that the Utah procedure of jury sentencing is violative of due process because the jury is given unfettered discretion in its choice between the death penalty and life imprisonment, without guides or standards of any kind.

A similar argument was asserted in Segura v. Patterson;[5] at page 254 of 402 F.2d, the court responded:

> * * * This court has discovered not one successful attack upon the discretion allowed the jury in this context. Perhaps this is because it is neither desirable nor feasible to postulate a specific standard to so control the jury. It is axiomatic that the line between contemporary community values and the penal system is filled by the jury's being allowed to be reflective of prevailing social thought. To assert that the adoption of rigid guidelines seeking to control the jury in this respect, thereby substituting merciless standards for present day flexibility, is compelled by due process is clearly untenable.

Defendants contend that the trial court erred by its denial of a hearing, out of the presence of the jury, on a motion to suppress evidence of a paraffin test, taken to ascertain the presence of gun powder on the hands of defendants. They assert that said test constituted a search and seizure, and they were entitled to a hearing to determine the validity thereof.

Prior to trial, defense counsel demanded a bill of particulars, included therein was a demand that the State produce any evidence in regard to any blood tests, fingerprints, ballistics, and powder burns. The court denied this demand. The prosecution, in its opening statement, made reference to a paraffin test. Defense counsel claimed surprise and stated that the defense was unaware that such test had been conducted. The defendants then made their motion to suppress the evidence and requested a hearing to determine whether the test was taken voluntarily and the constitutionality thereof.

The court ruled that the State was not obligated to disclose its evidence to the defense prior to trial.[6] The court further determined that the oral motion to suppress the results of the tests was premature, but the defendants could make their objections at the proper time to challenge the

4. Trop v. Dulles, 356 U.S. 86, 99, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958); Segura v. Patterson, note 3, supra, at pp. 254–255 of 402 F.2d; Sims v. Eyman (C.A. 9th, 1969), 405 F.2d 439, 447–448.

5. Note 3, supra.

6. "The purpose of the bill of particulars is to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense; the bill need not be so detailed as to state matters of evidence." State v. Winters, 16 Utah 2d 139, 144, 396 P.2d 872, 875 (1964); also see State v. Martinez, 21 Utah 2d 187, 188, 442 P.2d 943 (1968).

admissibility of any evidence which the State might offer, either with or without the presence of the jury. The trial court further ruled that a test for powder deposits on the hands was in the same category as fingerprints and photographs, that the consent of defendants was not a requirement of due process, and that it was not improper to admit the fact that such test had been taken.

In numerous federal cases, the principle has been applied or recognized that it is proper, subject to qualifications relating to the concept of fundamental fairness, to make use of the body of a person charged with crime, or detained with reasonable cause, as the case may be, either as real or physical evidence in itself, or as the basis for evidence of that nature developed from such use (as distinguished from verbal or "testimonial" declarations), * * * without violating the Fourth Amendment prohibition against unreasonable searches and seizures as applicable directly to federal prosecutions and, through the agency of the Fourteenth Amendment to state prosecutions * * *[7]

In Warden, Maryland Penitentiary v. Hayden,[8] the court observed:

* * * Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) settled the proposition that it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals. * * * *[9]

■ In the instant action, defendants were under arrest and had been apprised of their constitutional rights; there was no violation of their right to be free of unreasonable searches and seizures, when the State administered the paraffin test for the purpose of obtaining evidence which would aid in their conviction.

Defendants further assert that the trial court erred by admitting evidence of the paraffin tests when its reliability had not been established.

■ At the time the evidence of the paraffin test was introduced, defendants again objected on the ground that they had not had an opportunity to contest the legality of the police procedure; however, they made no objection as to the reliability of the test. Defense counsel participated in the cross-examination of the expert

7. Annotation: Physical Examination or Exhibition of, or Tests Upon, Suspect or Accused, As Violating Rights Guaranteed by Federal Constitution—Federal Cases, 16 L.Ed.2d 1335–1336.
8. 387 U.S. 294, 306, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967).

9. Also see Scott v. State, 83 Nev. 468, 434 P.2d 435, 437 (1967), wherein the court held that fingerprinting does not violate Fourth Amendment rights or the due process clause of the Fourteenth Amendment.

witness. Defendants may not for the first time assert their objection on appeal. As this court observed in State v. Tuttle:[10]

> \* \* \* Fairness requires that if he disputed the competency of the evidence he should make his objection at the earliest reasonable opportunity. He should not be permitted to wait until the questioned evidence was before the jury and attempt to make use of it, then claim that it was not admissible. Inasmuch as he chose to conduct his examination upon the basis of this evidence, before he stated his objection to it he should be deemed to have waived any such objection.

Defendants assert that the trial court erred by its refusal to declare a mistrial when a witness, during cross-examination, made reference to prison photographs being shown to witness, Graven.

Defense counsel, during his cross-examination of a police officer, queried as to whether there were only two photographs shown to Mr. Graven. The police officer responded:

> "There were several photographs. As I recall there were two photographs of each of the individuals, separate photographs. One from the sheriff's office, one a prison release picture, one a city police department photograph."

10. 16 Utah 2d 288, 294, 399 P.2d 580 582 (1965).

Defense counsel moved for a mistrial. The court denied the motion, but instructed the jury to disregard the remark.

Appellants cite Commonwealth v. Blose,[11] wherein the court held that a remark by an officer, upon direct examination by the Commonwealth, which characterized defendant's picture as a "penitentiary photograph" constituted error which could not be cured by an instruction to the jury to disregard the remark.

In the Blose case, the court discussed the doctrine of harmless error and observed that where the evidence of guilt was overwhelming the rule has been applied and the conviction sustained. The court stated that whether prejudice indelibly and hurtfully permeated the trial depends in the final analysis upon the facts of the individual case. The court stated that they could not say with fair assurance that the jury was not substantially swayed by the officer's testimony. The evidence was largely circumstantial; there was substantial corroboration of defendant's testimony; the jury experienced trouble arriving at a verdict. The court concluded that they could not be certain that defendant's criminal record was not placed in the scales in the formation of the ultimate judgment. These circumstances indicated more than a possibility that defendant's legal right to a fair trial was

11. 160 Pa.Super. 165, 50 A.2d 742 (1947).

**238**

substantially impugned by incompetent and prejudicial testimony.

In State v. Duree,[12] the court held that the inadvertent reference by a police officer to a picture as a "mugg shot" did not under the circumstances constitute reversible error.

■ In the instant action, the alleged error must be evaluated in conformity with the provisions of Section 77–42–1, U.C.A. 1953; an appellate court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. This court may not interfere with a jury verdict, unless upon review of the entire record, there emerge errors of sufficient gravity to indicate that defendants' rights were prejudiced in some substantial manner,[13] i. e., the error must be such that it is reasonably probable that there would have been a result more favorable to the appellant in the absence of error.[14] We cannot reasonably conclude that the inadvertent remark by the police officer, during cross-examination, deprived defendants of a fair trial, since a review of the record substantiates that defendants' guilt was conclusively proven by competent evidence.

■ Defendants further predicate error upon the denial by the trial court of their motion for a one-year continuance on the ground that the pretrial publicity was of such magnitude and pervasiveness as to deprive them of a fair trial by an impartial jury.

Defendants rely exclusively on Sheppard v. Maxwell,[15] and yet they do not assert the grounds upon which the Supreme Court found there had been a denial of due process, namely, "the state trial judge did not fulfill his duty to protect Sheppard from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the court room." Defendants do not and could not attribute to the able trial judge any failure to fulfill his duty to protect their rights. They merely claim that publicity four months prior to the trial was extensive and that references in the media to them as parolees from the state prison was prejudicial.

A review of the hearing held by the trial judge to determine if there should be a continuance does not reveal the type of prejudicial publicity recited in the Sheppard case, e. g., the media emphasized evidence that tended to incriminate Sheppard and pointed out discrepancies in his statements to the authorities. Yet the court in the Sheppard case stated:

---

12. 52 Wash.2d 324, 324 P.2d 1074 (1958).
13. State v. Sinclair, 15 Utah 2d 162, 170, 389 P.2d 465 (1964).

14. See footnote 6, State v. Seymour, 18 Utah 2d 153, 156, 417 P.2d 655 (1966).
15. 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

While we cannot say that Sheppard was denied due process by the judge's refusal to take precautions against the influence of pretrial publicity alone, the court's later rulings must be considered against the setting in which the trial was held. * * *[16]

The instant case is clearly distinguishable from Rideau v. Louisiana,[17] wherein the court held that there was a denial of due process of law to refuse a request for a change of venue, after the people of the area had been exposed repeatedly and in depth to the spectacle of defendant personally confessing in detail to the crimes with which he was later to be charged. The court observed that this spectacle, which was seen and heard by tens of thousands of people, who watched television was in a very real sense defendant's trial at which he pleaded guilty to murder. Any subsequent court proceeding in a community so pervasively exposed to such a spectacle could be but a hollow formality.

An independent study of the record as presented to this court by defendants does not reveal sufficient evidence that the pretrial publicity prevented a fair trial or so infected the minds of the jurors as to leave them biased against defendants.[18]

▆▆ Defendants claim that prospective jurors, who were opposed to the death penalty, were arbitrarily excluded from the jury panel. They cite Witherspoon v. Illinois[19] to support their argument.

The trial judge in his voir dire examination queried:

* * * Since this offense is punishable by death, if these men should be convicted of the crime of first degree murder, do any of you jurors entertain such conscientious opinions about the death penalty as would preclude you[r] finding a defendant guilty irrespective of how strong the evidence may be concerning guilt? * * *

This question specifically follows the statutory provisions of Section 77–30–19(9), U.C.A.1953. This statute complies with the second exclusion of footnote 21 of the Witherspoon case,[20] wherein the court stated:

* * * We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which

16. See pp. 354–355 of 384 U.S., p. 1518 of 86 S.Ct., p. 616 of 16 L.Ed.2d.
17. 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).
18. See State v. Van Duyne, 43 N.J. 369, 204 A.2d 841, 11 A.L.R.3d 1086 (1964); Irvin v. Dowd, 366 U.S. 717, 722–723,

756, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Annotation: Pretrial Publicity—Fair Trial, 10 L.Ed.2d 1243, 1289–1291.
19. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968).
20. P. 522 of 391 U.S., p. 1777 of 88 S.Ct., p. 785 of 20 L.Ed.2d.

the only veniremen who were in fact excluded for cause were those who made it unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*. * * *

[ Defendants contend that their identification by witnesses, Haney and Graven, in the police lineup without the presence of counsel at this critical state of their prosecution constituted a violation of due process of law.[21] The Wade decision does not apply to defendants, since the lineup in which they participated occurred prior to June 12, 1967.[22]

 Defendants further assert that the police procedure, whereby witness, Graven, the bartender, was shown only defendants' photographs for preliminary identification prior to the lineup, was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.[23]

As previously mentioned, Haney had been an acquaintance of defendant Lance for many years; however, he had forgotten his name. Haney went to the police station and by searching through identification books was able to locate the pictures of defendants. These pictures were shown to bartender, Graven, who verified Haney's identification. The facts in the instant case are clearly distinguishable from those in Foster v. California,[24] and there is no basis to support a conclusion that the pretrial confrontation clearly was so arranged as to make the resulting identification inevitable.

Judgment of the trial court is affirmed.

CROCKETT, C. J., and TUCKETT and HENRIOD, JJ., concur.

ELLETT, Justice (concurring):

I concur but desire to add the following:

In Utah the trial jury does not determine the penalty in criminal cases. Even when a jury recommends leniency in a conviction of first-degree murder, the judge still may impose the death penalty; and when there is no such recommendation of leniency, the judge, if he feels there has been a miscarriage of justice, can avoid imposing the death penalty by granting a new trial.

21. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
22. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
23. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).
24. Note 23, supra.