Raymond E. BASSETT, Petitioner,

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 77–1042.

United States Court of Appeals,
Tenth Circuit.

Submitted May 11, 1978.

Decided Aug. 14, 1978.

David E. Littlefield, Littlefield, Ritchey & Cook, Salt Lake City, Utah, for petitioner.

Phillip Wilens, Chief of the Government Regulations and Labor Section, Crim. Div., James P. Morris and Robert Kendall, Jr., Dept. of Justice, Washington, D. C., for respondent.

Before DOYLE and LOGAN, Circuit Judges, and STANLEY, Senior District Judge.*

LOGAN, Circuit Judge.

Raymond Edward Bassett was convicted in Layton, Utah city court for possession of marijuana under Utah Code Ann. § 58–37–8(2)(a)(i). He was fined one hundred dollars and given a suspended six-month county jail sentence subject to a year of successful probation. Bassett is an immigrant from England and currently a permanent resident of the United States.

Acting under 8 U.S.C. § 1251(a)(11), which provides, *inter alia*,

(a) Any alien in the United States . . shall, upon order of the Attorney General, be deported who—   . . .

.    .    .    .    .    .

(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marijuana,   . . .

the Immigration and Naturalization Service ordered Bassett to appear before an immigration judge to show cause why he should not be deported. Bassett appeared at the hearing without counsel, accompanied by his fiancee, Sharon Kesinger, and her two children from a prior marriage. Bassett married Ms. Kesinger, a United States citizen, one week after the hearing and is supporting her and the two children.

At the hearing Bassett admitted that: he was not a citizen or national of the United States; he was a native of England; he entered the United States in 1972 as an immigrant; and he was convicted for marijuana possession in Layton, Utah. The immigration judge found that he was deportable because of the marijuana conviction, and that he did not meet the statutory requirements entitling him to any discretionary relief. The Board of Immigration Appeals dismissed Bassett's appeal. Bassett appealed that decision to this court under 8 U.S.C. § 1105a.

Here Bassett argues that deportation for his conviction of marijuana possession constitutes a denial of his rights to due process and equal protection of the laws; that it subjects him to cruel and unusual punishment under the Eighth Amendment; and that his offense is not "illicit" under 8 U.S.C. § 1251(a)(11).

I

Bassett claims that the deportation violates his constitutional rights to due process and equal protection of the law. We must reject this argument based upon a long line of cases commencing with *Fong Yue Ting v. United States*, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893). *See also, Bugajewitz v. Adams*, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978 (1913); *Harisiades v. Shaughnessy*, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *Galvan v. Press*, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Although certain due process rights are extended to alien residents of the United States, the right to stay in the country is not protected. As stated by Mr. Justice Jackson in *Harisiades v. Shaughnessy*, supra:

Under our law, the alien in several respects stands on equal footing with citizens, but in others has never been conceded legal parity with the citizen. Most importantly, to protract this ambiguous status within the country is not his right but is a matter of permission and tolerance. The Government's power to terminate its hospitality has been asserted and sustained by this Court since the question first arose.

.    .    .    .    .

* Of the District of Kansas, sitting by designation.

That aliens remain vulnerable to expulsion after long residence is a practice that bristles with severities. But it is a weapon of defense and reprisal confirmed by international law as a power inherent in every sovereign state. Such is the traditional power of the Nation over the alien and we leave the law on the subject as we find it.

. . . . .

It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.

342 U.S. at 586–589, 72 S.Ct. at 517.

In *Galvan v. Press, supra,* Mr. Justice Frankfurter stated for the Court:

In light of the expansion of the concept of substantive due process as a limitation upon all power of Congress, . . . much could be said for the view, were we writing on a clean slate, that the Due Process Clause qualifies the scope of political discretion heretofore recognized as belonging to Congress in regulating the entry and deportation of aliens.

. . . . .

But the slate is not clean. As to the extent of the power of Congress under review, there is not merely "a page of history," . . . but a whole volume. Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process . . . But that the formulation of these policies is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government.

347 U.S. at 530–531, 74 S.Ct. at 742.

It is argued that recent developments blurring the distinction between criminal and civil proceedings for application of constitutional principles, and in the limitations imposed by the courts upon Congressional action, should cause us to eliminate this incongruous situation where resident aliens enjoy constitutional protection of their rights to work and live in the country, but their ability to stay is accorded no protection against actions of Congress. *See* Helbush, *Aliens, Deportation and the Equal Protection Clause: A Critical Reappraisal,* 6 Golden Gate U.L.Rev. 23 (1975).

The Supreme Court has quoted *Galvin v. Press* with approval in relatively recent cases, and we do not think we are free to ignore this line of authority. *See Kleindienst v. Mandel,* 408 U.S. 753, 766–767, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1971).

II

■ Bassett contends his deportation is cruel and unusual punishment within the Eighth Amendment. His theory is that deportation is additional punishment for his crime. Appellant cites *Trope v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), for the proposition that no set standards guide what is to be considered cruel and unusual punishment, except those of contemporary civilization. "The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* at 101, 78 S.Ct. at 598. Since public attitudes and some state laws concerning the use and possession of marijuana have become more flexible and non-criminal, appellant argues it is cruel and unusual to punish him so severely. Bassett also asserts that his deportation is cruel and unusual punishment because it will break up his family or subject his dependents to extreme hardship.

We reject appellant's proposition, although the result in this case is harsh. Immigration laws never have been considered penal. "Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal proce-

dure." *Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952). Obviously these laws at times lead to results that significantly affect the lives of many persons, including United States citizens. The Supreme Court has observed that deportation may deprive a person of "all that makes life worth living." *Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922).

One United States District Court, responding to a sense of justice in a marijuana case with facts directly analogous to this case, recently held the deportation to constitute cruel and unusual punishment; the Seventh Circuit summarily reversed the decision. *Lieggi v. United States Immigration and Nat. Serv.*, 389 F.Supp. 12 (N.D.Ill. 1975), *rev'd mem.* 529 F.2d 530 (7th Cir. 1976). Although this appears to be the first time the Eighth Amendment argument has been asserted in this Court, every other appellate court facing the issue has rejected its application to these proceedings. *See Fong Yue Ting v. United States*, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893); *Oliver v. Department of Justice*, 517 F.2d 426 (2d Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 789, 46 L.Ed.2d 646 (1976); *Van Dijk v. Immigration and Nat. Serv.*, 440 F.2d 798 (9th Cir. 1971); *DeLucia v. Immigration and Nat. Serv.*, 370 F.2d 305 (7th Cir. 1966); *Cortez v. Immigration and Nat. Serv.*, 395 F.2d 965 (5th Cir. 1968).

The most difficult aspect of the case for this court is the fact the laws concerning possession of marijuana are changing and it is possible that what was a crime in Utah might not be such under the law of another jurisdiction. Also, if Bassett had been convicted of the same crime in his native country England there is precedent that would allow him to receive permanent resident status, his current situation, upon arrival from England. *Lennon v. Immigration and Nat. Serv.*, 527 F.2d 187 (2d Cir. 1975). But the non-penal nature of Congress' plenary power to enumerate and enforce deportable offenses does not permit us to use the Eighth Amendment as a basis for setting aside the deportation order.

## III

Finally, petitioner Bassett argues that his possession of marijuana was not "illicit" within the meaning of 8 U.S.C. § 1251(a)(11). In this he relies principally upon the language of *Lennon v. Immigration and Nat. Serv.*, 527 F.2d 187 (2d Cir. 1975). We note that Utah Code Ann. 58–37–8(2)(a)(i), under which Bassett was convicted requires that the possession be "knowingly." And we do not understand the case upon which petitioner relies, *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872 (1964), to hold that the conviction could stand if he did not know the substance was marijuana.

Neither do we accept a contention that the use of "illicit" in the statute indicates something more is required beyond what is generally understood in this country to support a conviction for the criminal possession of marijuana. Webster's Third New International Dictionary (1976) defines illicit as "not permitted: not allowed: unlawful." We will ascribe to Congress the meaning plainly derived from use of the term. The argument that something special or different is meant by "illicit" is particularly weak in the context of the legislative history of the section. Congress amended Section 1251(a)(11) in 1960 to specifically add marijuana after the reference to possession of narcotic drugs as a deportable offense. 74 Stat. 504, 505.

The ruling of the Board of Immigration Appeals dismissing petitioner's appeal is affirmed.