Claude JOHNSON, Plaintiff in Error,

v.

STATE of Oklahoma, Defend-
ant in Error.

No. A–14131.

Court of Criminal Appeals of Oklahoma.

Sept. 25, 1968.

Rehearing Denied Jan. 3, 1969.

Ward & Mayhue, Ada, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

Plaintiff in Error, hereafter referred to as defendant, was tried in District Court of Pontotoc County before a jury for the crime of Murder. His trial commenced September 12, 1966 and on September 13, the jury returned a verdict of guilty and set punishment at life imprisonment in the State Penitentiary. Defendant's motion for new trial was overruled and judgment and sentence was passed September 21, 1966. This is an appeal from that conviction.

The facts briefly stated are: Defendant was arrested in Ciudad Acuna, Mexico early in the morning of April 28, 1966 and was placed in the local jail. During the day he cut his wrists in an apparent attempt to commit suicide and was given medical treatment by a local Mexican doctor. Thereafter, the Mexican authorities notified the Sheriff of Val Verde County, Texas at Del Rio that they had incarcerated in their jail an American citizen, who asked to be returned to Del Rio to be placed in jail. As the result of such notification Deputy Samuel Perez went to Ciudad Acuna to inquire into defendant's situation.

Deputy Perez testified that he informed defendant that he could not remove him to the Val Verde County jail unless Defendant was wanted for some crime in the United States. Defendant informed him that he was wanted on a bad check charge in Wichita, and that he had also passed bad checks in Del Rio, Texas. Deputy Perez testified that he also informed defendant that he could not remove defendant to Val Verde County jail unless defendant requested the transfer and voluntarily went to the Texas jail. The Deputy stated that defendant requested to be transferred and waived all extradition rights. So, Deputy Perez obtained defendant's possessions and proceeded to take custody of defendant. However, when the Mexican authorities gave defendant's possessions to Deputy Perez, they pointed out to the Deputy a driver's license bearing the name of Floyd Leon Mills, and informed him of the white 1961 Impala Chevrolet automobile that defendant had attempted to sell in Mexico. Thereafter, defendant was taken to Val Verde County jail.

The facts were further developed to show that defendant had offered to sell the Chevrolet automobile to one Rodolfo Rivera, who was a bar-tender in Acuna, Mexico. Mr. Rivera testified through an interpreter, Dr. Chalmers Herman, that defendant offered to sell him the Chevrolet, but because defendant did not have the title to the car, and also because the witness did not have the money he did not buy the car. But, Mr. Rivera did buy a .22 rifle from defendant for three dollars ($3.00). This all transpired before defendant was arrested by the Mexican police.

Concerning defendant's stay in the county jail in Del Rio, Texas, Deputy Perez testified that they were concerned about the whereabouts of Floyd Leon Mills; and when they asked defendant about him, defendant told several different stories.

Finally, however, defendant said he and Mills had a fight in Oklahoma, that he left Mills tied up in an abandoned house in the community of Center, West of Ada, Oklahoma, but that he left him plenty of water. The Texas authorities notified the Pontotoc County Sheriff's office about the possible plight of Floyd Leon Mills. In the meantime, the Mexican authorities recovered the .22 rifle from Mr. Rodolfo Rivera and turned it over to the Texas authorities.

The Pontotoc County authorities were unable to locate Mills, so they requested more specific information from the Texas authorities. During this period of time Deputy Samuel Perez of Texas, inquired of defendant on several occasions where Floyd Leon Mills was, but each time defendant would tell a different story. Finally, on April 29, Deputy Perez stated to defendant that defendant wasn't telling the truth and that he was not going to talk to him anymore. Deputy Perez then left to go home. Later that evening, according to Val Verde County Sheriff Herman Richter's testimony, defendant commenced calling for someone to talk to him, that he had something to say. Sheriff Richter testified further, that he finally told the jailer to bring defendant on down and he would hear what he had to say. The jailer took defendant to the Sheriff's office and defendant told the Sheriff he had killed Floyd Leon Mills. He also told Sheriff Richter where the body would be found. Sheriff Richter notified the Oklahoma authorities who subsequently found the body of Floyd Leon Mills several miles West of Ada, Oklahoma in a clump of woods. The hands of the deceased were tied behind his back and he had been shot through the leg and through the neck.

Sheriff Richter testified on cross examination that he did not give defendant the "Miranda warnings" when defendant was brought down from the jail cell to his office, before defendant commenced telling about his having killed Floyd Leon Mills. He stated however, the next day defendant was taken before the Justice of the Peace in Del Rio, Texas, where he was advised of all his Constitutional rights prior to signing a typewritten confession.

Defendant was returned to Pontotoc County where he was charged by complaint with the crime of Murder, and was taken before the County Judge for appearance on May 9, 1966. The County Judge explained defendant's Constitutional rights to him, and set his preliminary hearing for May 31. On that date, defendant appeared in person and with his court appointed counsel and requested the preliminary hearing to be continued, so it was reset for June 24; and on that date it was again reset for June 27. The preliminary hearing was held on June 27, when the County Judge bound defendant over to stand trial for Murder in the district court.

It is to be noted that the law firm of Ward and Mayhue in Ada, Oklahoma was appointed to represent defendant and did so throughout all the proceedings in Pontotoc County and perfected defendant's appeal to this Court. That law firm is to be commended for the excellent manner in which they represented this defendant.

Information was filed in the district court on July 7, 1966 charging defendant with the murder of Floyd Leon Mills alleging the murder to have occurred on or about May 25, 1966. On the same date the County Attorney filed an application for commitment of defendant in a state mental hospital for ninety (90) days for a sanity observation, as provided in the Statutes. Defendant appeared for arraignment in district court on July 7, with his counsel and asked for twenty four (24) hours delay to enter his plea. The assigned judge, Honorable Bob Aubrey reset defendant's arraignment, and also set the hearing on the County Attorney's Application for commitment of defendant to be heard July 13. On that date, defendant was arraigned and the hearing was had, at the conclusion of which the judge temporarily denied the application and instructed that the proceedings be transcribed after which the regular district judge, Honorable Lee R. West would make

the final ruling on the application. On August 3, 1966 Judge Lee R. West granted the commitment application and ordered defendant transferred to Griffin Memorial Hospital, Norman, Oklahoma for thirty (30) days for mental observation.

On August 11, defendant filed his motion to suppress the confession, or admission, and any and all evidence obtained as the result of the confession alleging that such was illegally obtained. On September 1, defendant filed an affidavit for continuance and for a jury determination of defendant's sanity. On September 2, a hearing was held and defendant's request for continuance and for jury determination of sanity, were both denied.

Defendant's trial was commenced on September 12, when defense counsel renewed all of his prior objections. The jury returned its verdict on the following day, September 13. The defendant's motion for new trial was filed on September 21, 1966, and on the same day defendant filed his notice of intent to appeal, and subsequent thereto the appeal has been perfected to this Court.

Defendant argues his appeal under three propositions, after citing fourteen (14) errors of the trial court in his motion for new trial.

Defendant states in his first proposition, that court erred in admitting evidence directly and indirectly discovered and obtained as a result of the "illegally obtained" confession. Defendant's motion to suppress any and all evidence obtained, or discovered, as a result of defendant's confession. This second part of the motion to suppress was denied by the trial court.

In his brief, defendant states: "The primary authority upon which this assignment of error is predicated is the case of Miranda v. Arizona, 86 S.Ct. 1602 (1966)." [384 U.S. 436, 16 L.Ed.2d 694]. Thereafter, defendant quotes from the last phrase of syllabus number 67, of the United States Supreme Court as follows: [U.S. 478, S.Ct. 1630, L.Ed.2d 726]

"* * * but unless and until such warnings and waiver are demonstrated by prosecution at the trial, *no evidence obtained as a result of interrogation can be used against him.* U.S.C.A.Const. Amends. 5, 6." (Emphasis added in brief).

Defendant continues: "* * * He was questioned by the authorities as to the whereabouts of the deceased and the defendant first assured them that the deceased was located in a vacant house near the community of Center, Oklahoma, which is some six or eight miles West of Ada, Oklahoma." Defendant then describes the call made from the Pontotoc County Sheriff's Office to the Del Rio, Texas authorities for further information." His brief continues: "In other words, but for the illegally obtained confession, the witness, Deputy Sliger could not have testified at the trial concerning the above exhibits [large straw hat, Barlow pocket knife, brown belt] and the finding of the body." Defendant's subsequent discussion relates to the question of a driver's license, purporting to belong to Floyd Leon Mills; identification of defendant's automobile; the introduction of a .22 rifle into evidence, all of which defendant contends was erroneously introduced in evidence. Defendant's brief continues to the effect that all the evidence obtained, even before defendant made his oral confession to Sheriff Richter of Del Rio, Texas, was in violation of the "Miranda Rule", absent the required warnings.

We do not agree with defendant's contention. In fact, this writer is inclined to believe that even under the Miranda decision, the confession of defendant was admissible. But insofar as the trial court ruled the confession to be inadmissible, that question is not before the court. We believe the statement of Professor B. James George, Jr., of the University of Michigan Law School answers this proposition most aptly. Professor George wrote concerning the quotation cited by defendant, as to

whether or not such statement created a "Derivative Evidence Rule", as follows:[1]

> "Accordingly, to take one brief statement from a 61 page opinion and couple it with a question discussed in passing during oral argument before the Court when the point in question was hypothetical only so far as the cases under consideration were concerned, is to go further than one usually need go in determining whether the Court has actually decided an issue."

 It is interesting to observe that the same portion of the Miranda opinion [384 U.S. 478, 86 S.Ct. 1630, 16 L.Ed.2d 726] in the paragraph preceding the last one in Part III, reads as follows:

> "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. *Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.* The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. *There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make.* Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis added).

It is on this basis that this writer feels defendant's confession was admissible. In this case, notwithstanding the fact that Deputy Perez had questioned defendant concerning the whereabouts of Floyd Leon Mills, he was performing his duty in trying to locate Mills, who might still have been in Mexico, so far as the Deputy knew. The unique nature of the situation adds color to its significance. Defendant was removed at his own request from a jail in a foreign nation, and had in his possession the driver's license of another person, as well as that person's automobile. Consequently, the Deputy's position appears to be logical in that he was merely attempting to locate the other person. At that time, neither the Deputy nor anyone else had any knowledge whatsoever that defendant had committed any crime, other than passing bad checks. Finally, after the Deputy concluded that defendant was not telling him the truth, he merely stated that he would not talk with defendant any longer, about the matter of Mills. Subsequent to Deputy Perez's declaration to defendant, "that he wasn't going to talk to him anymore," and after the Deputy went home to eat supper, defendant initiated his call to the Sheriff and stated his desire to tell about the crime. A fact worthy of repeating is that there is no reason to believe defendant had committed a murder, nor· was there anything to indicate that a murder charge might be imminent. As the Supreme Court said in Miranda v. State of Arizona, supra: *"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime * * *."* This defendant was in the Val Verde County jail, at his own request, having made a specific request of the Deputy Sheriff to take him back to Del Rio, Texas. Defendant was not being sought by the Texas authorities. He voluntarily waived his extradition rights, so that he could be taken back to Del Rio. In theory, at least, *defendant walked into the Val Verde County jail and subsequently confessed to a murder.*

As we review the cases pertaining to derivative evidence, we find that these cases dealt extensively in the areas of "search and seizure, and wiretapping" cases. Such application has also been applied in

1. George, A New Look At Confessions: Escobedo—The Second Round. Dean-Hicks Co., p. 123.

the cases involving witness immunity statutes, as they pertained to the privilege against self-incrimination. Consequently, we think it is illogical to take one part of a sentence in the Miranda Opinion, as being a rule to prohibit derivative evidence. Again quoting from Professor George:

> "My own position is that one ought not read a lengthy judicial essay any more broadly than necessary because justices as advocates say much more than they ought to make the specific point they have in mind. *If the Court wants a derivative evidence rule, it should say so explicitly in a case that directly presents the question on its facts."* [2] (Emphasis added).

■ Defendant states further in his brief, "It is most difficult to distinguish the testimony concerning the automobile, the rifle, and the driver's license. *The testimony presented by the witness Perez resulted from questions asked of the Defendant with the initial phases being in the police station in Acuna, Mexico."* (Emphasis ours). This aspect of the interrogation seems to be of little concern, with reference to the "Miranda Admonitions", as we view the matter. We doubt very seriously that the Mexican authorities follow the pronouncements of the United States Supreme Court; so when the defendant placed himself voluntarily within the jurisdiction of Mexico, and became incarcerated in their jail by his own actions, he became subject to Mexico's methods of interrogation, not those discussed in Miranda v. State of Arizona, supra. Such being the case, we do not feel obligated to extend the interrogation limits of the "Miranda decision" to include another country. Consequently, any complaint concerning information gained by the Mexican authorities is without merit. Hence, the testimony concerning the automobile, the rifle, and the driver's license were all admissible in evidence, insofar as they were obtained by the Mexican authorities. Likewise,

those items of evidence were obtained prior to the time defendant voluntarily "spilled" the story concerning the death of Mills. Also, there is nothing in the record before the Court which indicates any coercion being used, on the part of the Texas police authorities. As the Nevada Supreme Court recited in Schaumberg v. State of Nevada, Sup.Ct., 432 P.2d 500 (1967):

> "The thrust of the [Miranda] decision was aimed against the 'potentiality for compulsion' * * * found in custodial interrogation initiated by police officers."

■ Defendant's record of trial shows that defendant voluntarily requested to tell the story of Mills' death. The fact that he was being held in the Val Verde County jail, on other charges, does not in itself imply coercion. By the same token, the cases cited in defendant's brief are those pertaining to "search and seizure" and "wire tapping" matters, and are not applicable under the facts of this case.

Defendant cites In re Fowler, Okl.Cr., 356 P.2d 770, in an effort to provide support for his contention of a "derivative evidence rule". But as we review the Fowler case, the facts of that case are entirely different from those in the case now under consideration. Therefore, the rule expressed in Fowler is not applicable to this case.

■ Defendant contends in his second proposition that the trial court erred in denying his affidavit for continuance and for a jury determination as to defendant's sanity. We are of the opinion this complaint is without merit. The purpose for committing defendant to the State Hospital for observation was to obtain the psychiatrists' evaluation of defendant's state of sanity. On August 26, 1966, the Hospital authorities informed the trial court that defendant's case should be handled through the courts, and certified defendant's sanity according to law, and returned defendant to the custody of the Sheriff.

2. Ibid, pp. 123–124.

Title 22 O.S. (1961) § 1162 provides as follows:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

As we review the record, defendant failed to offer any substantial showing to create a doubt in the judge's mind, in contrast to the hospital evaluation of defendant, to warrant the jury trial as to defendant's sanity. See: Acuff v. State, Okl.Cr., 283 P.2d 856; and Johnson v. State, 73 Okl. Cr. 370, 121 P.2d 625.

Defendant's third and last proposition states that the trial court erred in admitting certain photographs of the body of the deceased which were objected to by the defendant. In his argument, defendant contends that the photographs enflamed the jury and aroused their passions and prejudice. In a close case, where the evidence supporting a conviction was weak, defendant's argument might have merit. But, under the circumstances of this case we fail to see how the jury was aroused, except to say that the photographs clearly removed any contention that defendant was in the process of defending himself from the deceased when he shot Mills to death. The photographs showed the body of deceased, lying on his stomach, with his hands tied behind his back.

"Photographs and pictures are admissible where they illustrate or clarify some issue of the case. Whenever it becomes relevant to describe a person, place or thing, and photographs and pictures are shown to be a faithful reproduction of whatever they purport to reproduce, they are admissible for the purpose of assisting the court or jury in understanding the situation." Cody v. State, Okl.Cr., 361 P.2d 307, 84 A.L.R.2d 997; McGowan v. State, Okl.Cr., 380 P.2d 274.

The photographs concerned in this case were properly identified and did faithfully reproduce what they purported to reproduce and were therefore admissible.

The evidence offered to convict defendant in this case was clearly sufficient to prove that defendant unlawfully caused the death of deceased, and is guilty of the charge of murder. The doctor who performed the autopsy stated with certainty that the shot which went through deceased's neck caused his death instantly. The deceased had also been shot through the leg, by the same caliber bullet which caused his death.

After having carefully and thoroughly considered the record of defendant's trial, and all other matters submitted, we are of the opinion that this case should be, and the same is therefore, affirmed.