Michael Wayne **WATTS**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–15703.

Court of Criminal Appeals of Oklahoma.

July 28, 1971.

984

Henry W. Floyd, Oklahoma City, court-appointed attorney, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max A. Martin, Asst. Atty. Gen., on briefs, Larry Derryberry, Atty. Gen., on oral argument, for defendant in error.

BUSSEY, Presiding Judge.

Michael Wayne Watts, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County with the offense of Murder. He entered a plea of not guilty by reason of insanity, wherein the court ordered a trial by jury to determine the present sanity of the defendant to stand trial. The jury returned a verdict finding him sane. He was then tried before a jury who found him guilty of Murder, and assessed his punishment at death, and from said judgment and sentence, he appeals.

The evidence adduced at the trial revealed that on November 15, 1968, Eva Sigler lived with her husband, Willard Bill Sigler, in a trailer house in Oklahoma City, Oklahoma. She testified that at approximately 7:30 p. m. she and her husband were watching television and the defendant came into the trailer carrying a rifle. He fired a shot behind her head and informed them that, "This is a holdup." (T 83). Her husband gave him his billfold and the defendant asked if they had any guns. He ordered them to lean over the

couch and she heard him looking around the trailer. They subsequently sat down on the couch and the defendant fired a shot which struck Mr. Sigler in the eye. He then asked her, "if she had ever been screwed by a nigger." (T 90). He took her to the bedroom and raped her. She did not resist and upon completing the intercourse, he stated that "he ought to kill me because I would tell on him." She begged him not to kill her. He struck her in the head with the gun. The defendant took some rifles from a closet and left. She passed out and regained consciousness two days later in the hospital. She remained in the hospital two weeks and upon returning to the trailer discovered that several guns, a transistor radio, and money, were missing. She stated that she was called to the Sheriff's office on February 6, 1969 to identify the defendant. There was no line-up and the defendant was the only person present. She did not make a positive identification at that time, but was positive that the defendant was the person that came to the trailer.

Dr. Hartmill testified that he performed an autopsy on the decedent. The cause of death, in his opinion, was a bullet wound of the head and brain. The bullet removed from the body was a .25 caliber, or less.

Wade Brooks stated that he was married to the defendant's cousin and was living with them in December of 1968. He was ultimately declared to be a hostile witness. He admitted making two written statements [1] involving the defendant with the murder. He stated that the statements were true. It was brought out on cross-examination that the witness was in the county jail awaiting a Motion to Revoke a Suspended Sentence. He was evasive as to the date the defendant admitted committing the offense. He admitted that he had given some thought that the State could "sock it to him" (T 143) if he did not say what they wanted.

Sheriff Bob Turner testified that he was with the defendant on January 2, 1969, in the courtroom awaiting the arrival of a Public Defender. The defendant made the statement that "he didn't see any reason for wasting time waiting on a lawyer that he didn't need a lawyer that he had already told them that he had killed a man." (T 171). He stated he was not questioning the defendant at the time of the statement and admitted that the defendant has subsequently denied making the statement.

Howard Bugg was one of the first police officers to arrive at the scene. He described what he observed and identified two pictures as true representations of the inside of the trailer. One picture was of the decedent and the other was the bedroom where Mrs. Sigler was found. The pictures were admitted into evidence over the objection of the defendant.

The defendant presented one witness, Dr. James Cox, a psychiatrist. He testified that he examined the defendant on two separate occasions and made a background investigation. The defendant, in his opinion, was mentally ill both at the time of the alleged offense and the date of the trial.

[1]. (T 133) "Friday night I was at Spencer and Michael Watts, he drove up. I had parked at the Four-Corners and he saw my car and told me that he had killed a man and beat up this woman and he told me not to tell anybody. If someone had seen him out there to tell him that he hadn't been out there. I told him okay and I told him that I was going to stay out there that weekend and I stayed out there that weekend and then I came back here Sunday evening and he showed me the guns, showed me the guns that he had.

He didn't tell me where he got them from but he showed them to me and what kind they were and everything and that evening we was on our way out to Spencer then he told me and then he turned off 23rd to one of the back roads. He was going to dispose of them and he turned off of 23rd and just throwed them over in the river and the transistor radio he throwed it in the river."

(T 134) "If anyone asks if he had seen him in Green Pastures that he had not been there."

The State called two witnesses in rebuttal—Dr. Price and Dr. Schmidt, psychiatrists at Central State Memorial Hospital. They testified that they examined the defendant during a five week period of observation. It was their opinion that the defendant was not mentally ill at the time of the offense or at the date of trial; that he knew right from wrong and understood the nature and consequences of his acts.

■ The defendant first contends that the arrest was illegal and was made after a violation of a privileged communication between husband and wife. The defendant cites 22 O.S.1961, § 702, which states:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also in criminal cases; Provided, however, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, or except in a criminal prosecution against either the husband or wife, or both, for a felony committed by either, or both, against the minor children of either the husband or the wife, but they may in all criminal cases be witnesses for each other, and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose communications made by one to the other except on a trial of an offense committed by one against the other or except on a trial of a felony committed by one, or both, against the minor children of either the husband or the wife."

It is our opinion that this statute applies only to testimony given at a trial and has no application to the present factual situation in that defendant's wife did not testify at the trial, nor was any reference made to her statements. We, therefore, find this proposition to be without merit.

■ The next proposition alleges that the trial court erred in allowing a statement made by defendant to be admitted as evidence and further that the court erred in denying his motion requiring the District Attorney to reveal the statement prior to trial. The defendant filed a Motion to Reveal prior to trial. It is noted he requested: "The following papers, to-wit: any and all statements made by defendant herein." (Page 6 of the Sanity Transcript). The court then inquired as to the State's position. The District Attorney informed the court that the State did not have any written statements made by the defendant. (Page 8 of the Sanity Transcript).

■ The modern trend of the law is that a defendant should be allowed to inspect a signed confession prior to trial. This Court has so held in the case of Doakes v. Dist. Ct. Oklahoma Co., Okl.Cr., 447 P.2d 461, wherein we stated:

"Therefore, we conclude that where an accused gives a statement to the police under distressing circumstances without benefit of counsel and is later unable to remember what he said in the statement in order to assist counsel in his defense, substantial justice requires the prosecution to allow the accused or his counsel a pre-trial inspection of such statement."

In the case at bar there was no written statement, but rather two oral statements made by the defendant. The first confession was not offered as evidence. We note that the defendant did not request the State to reveal any oral statements and we are of the opinion that upon proper application by the defendant, the State should be required to reveal the contents of oral statements. We, thus, must find that the defendant cannot now complain of something he did not request.

The defendant was interrogated without counsel in the office of the District Attorney and apparently confessed to the offense. The State made no attempt to introduce this statement. Some time later he was taken to a courtroom by Sheriff Bob Turner to await the arrival of an attorney. He stated to the Sheriff that "he did not

see why they were waiting all this time. I killed the man. I have already told them about it." (T 154). Prior to admitting this statement as evidence, Judge Owens conducted a Jackson v. Denno hearing, outside the presence of the jury. Sheriff Turner testified as to the circumstances surrounding the statement. The defendant testified and denied making the statement. He did not maintain that the statement was involuntarily made, but rather that he did not make the statement. The trial court made a finding that the statement was made as a spontaneous utterance with no conversation having taken place thereto. (T 158).

■ This Court has previously held that there is a distinction between voluntary statements and statements adduced from interrogation. In the case of Lung v. State, Okl.Cr., 420 P.2d 158, we stated in the Fifth paragraph of the Syllabus:

"Volunteered statements of any kind are not barred by the Fifth Amendment, nor their admissibility affected."

This proposition was re-affirmed by this Court in Johnson v. State, Okl.Cr., 448 P. 2d 266.

There is no evidence in the record before this Court to indicate that the defendant was being interrogated at the time he made the statement. There is no evidence of any coercion being used. In the *Johnson* case, supra, we quoted the Nevada Supreme Court, which held in Schaumberg v. State, 83 Nev. 372, 432 P.2d 500:

"The thrust of the [Miranda] decision was aimed against the 'potentiality for compulsion' * * * found in custodial interrogation initiated by police officers."

■ It is our opinion that the trial court properly admitted the statement for the jury to determine as a question of fact whether it was, or was not, given by the defendant, and whether it was given voluntarily. We, thus, must find this proposition to be without merit.

■ The next proposition states that without the introduction of the alleged "ad-mission" into evidence, the evidence presented to the jury would not have been sufficient to prove that the crime was committed by the accused. We have carefully reviewed the entire record and conclude that Mrs. Sigler positively identified the defendant as the perpetrator of the offense. We further conclude that Wade David Brooks' testimony bolsters that given by the deceased's spouse. There was overwhelming evidence in the record for the jury to find this defendant guilty beyond a reasonable doubt, excluding the incriminating statement. We, therefore, find this proposition to be without merit.

■ The defendant's next proposition alleges that the District Attorney made shocking and improper remarks in his closing argument that were calculated to inflame the minds of the jurors and arouse prejudice or passion against the defendant. He further argues that the court erred in admitting inflammatory photographs without supporting evidence by the photographer. We note that Officer Bugg testified that the photographs accurately depicted what he observed at the scene of the offense. This Court has previously held that this is the proper basis to introduce photographs. In the case of Cody v. State, Okl.Cr., 361 P.2d 307, we held in paragraph 16 of the Syllabus:

"Photographs and pictures are admissible where they illustrate or clarify some issue of the case. Whenever it becomes relevant to describe a person, place or thing, and photographs and pictures are shown to be a faithful reproduction of whatever they purport to reproduce, they are admissible for the purpose of assisting the court or jury in understanding the situation."

See also Stone v. State, Okl.Cr., 442 P.2d 519 and Johnson v. State, Okl.Cr., 448 P. 2d 266.

■ The defendant also argues under this proposition, that the State failed and refused to introduce the alleged murder weapon, a ballistics report, fingerprints or other technical evidence, which denied him

a fair trial. We do not find from reviewing the record that such evidence did, in fact, exist. We further conclude that if such evidence did exist, there is nothing in the record which would indicate that it would have been favorable to the defendant.

■ The defendant complains of five improper remarks made by the District Attorney in his closing argument. He first objects to a statement made by the State which was to the effect that the jury had to convict the defendant "not only for Mrs. Sigler, but the next victim." (T 274). We note that the defendant did not object to this remark. In Gaddis v. State, Okl.Cr., 447 P.2d 42, it was stated in the third paragraph of the Syllabus:

"Objections must be made to improper argument during the trial, and defendant must go further and move the objectionable argument be stricken from the jury's consideration, unless the remarks were such they could not be cured by their withdrawal from the jury."

■ The second remark made by the District Attorney of which the defendant complains, was "This is the bloodiest, cruelist and savagest thing that you are ever going to consider as a juror and it was done by this man here and you know what you do to dangerous animals." (T 274). The defendant objected to this statement and asked for a mistrial, which was overruled by the trial court. This Court has dealt with a similar question in the case of Ramos v. State, Okl.Cr., 445 P.2d 807, wherein the District Attorney stated: "and I'll say this to you, if you saw an animal that was rabid and mad you could kill it, and you would, wouldn't you, you would get rid of it, wouldn't you?" In affirming this decision, we quoted from the case

of Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989, wherein this Court said:

"Courts are very liberal in allowing attorneys to present their views in their arguments to the jury and it is only when they purposely go outside of the record for the purpose of exciting the passion and prejudice of the jury so as to cause them to act in a biased manner will the courts interfere so as to set aside the verdict. As hereinabove stated the language used by the prosecutor was very forceful, but we cannot say that it was wholly unsupported by the record. In fact we think the record completely supports the references made to the accused. His guilt is completely shown. We agree with the prosecutor that an adult who would commit the acts done by the defendant shows that he is, 'lowdown, degenerate, and filthy.' He richly deserves the punishment which he received."

■ The defendant next contends that the District Attorney went outside the record and gave his interpretation of the Bible.[2] The defendant did not object to the remark and thereby waived his right to now raise the question on appeal. Gaddis v. State, supra.

■ The defendant further alleges that the District Attorney coerced and cajoled the jury by contending and challenging that if they did not return a death penalty they were cowards.[3] The record does not indicate the State ever used the word "coward." The record further does not reflect that the defendant objected to this argument and cannot now object. Gaddis v. State, supra.

■ The final allegation of this proposition argues that the District Attorney made an improper comment concerning the absence of the accused or other witnesses.

2. (T 287) "Think of it, will you, Paul did not mean of the great virtue of charity that we shall have a passion for those that kill people rather I think he meant a passion for the victim."

3. (T 288) "Let's let them know that no longer are we going to be afraid that the jurors are not afraid to assess the penalty."

The statement to which the defendant objects was as follows: "And then we have Sheriff Bob Turner. He has been Sheriff here for eighteen years, been employed here and the evidence is obvious that the defendant told him that he had killed the man and it is undisputed, it is undisputed to the crime in chief." (T 270).

█ This Court has repeatedly held that a reference to the State's evidence as being uncontradicted is not improper. See Montgomery v. State, Okl.Cr., 447 P.2d 469; Gaddis v. State, supra; Tilford v. State, Okl.Cr., 437 P.2d 261. The defendant again did not object to this remark and for these reasons, we must find this contention to be without merit.

█ We are of the opinion that the record clearly defines the guilt of the defendant and that none of the statements made by the District Attorney in his closing argument, as set out in the defendant's brief, denied him of his right to a fair trial.

█ Finding this assignment of error without merit, we will consider defendant's fifth proposition of error that: "The court erred in failing to grant a continuance while motions to quash the arrest warrant and quash the waiver had not been ruled upon." We find from the record that the judge presiding at the Sanity portion of the trial, did reserve the ruling on the Motion to Quash the arrest warrant and Motion to Quash the waiver, until such time as it appeared that they were properly ready to be presented.[4] The trial judge granted the defendant a continuance at the conclusion of the sanity trial. The record is void of any further reference by the defendant urging the trial court to consider the Motions to Quash under advisement. The defendant did make an oral motion for a continuance the day of the trial. This Court has consistently held that the granting or denial of a continuance in a criminal case is addressed to the sound legal discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse of that discretion. Townley v. State, Okl.Cr., 355 P.2d 420.

We are of the further opinion that since the Motions to Quash were taken under advisement at the request of the defendant, and never re-urged by the defendant, that he should not be allowed to complain at this time. We, therefore, find this proposition to be without merit.

█ The defendant's next proposition of error is two-fold. He first alleges that the trial court erred by failing to give the jury directions or standards to be used in determining whether or not to assess as punishment life imprisonment or death. He concludes that the capital sentencing system established under Oklahoma law, confers upon a jury "a naked and arbitrary power."

█ This Court cannot agree with the conclusion reached by the defendant. We are of the opinion that any standards directing juries in making a decision as to punishment is a function of the Legislature, not the Courts.

█ We accept the principle of law as set forth in Segura v. Patterson, 10 Cir., 402 F.2d 249, wherein the Court stated:

"The final assertion relative to the Colorado procedure of jury sentencing is that it is violative of due process because the jury is given unfettered discretion in choosing between the death penalty and life imprisonment and in reaching the life and death decision a Colorado jury proceeds without guides or standards of any kind. Such unreviewable discretion in determining the sanction to be imposed in a first degree murder situation has long been accepted in most jurisdictions tracing their origin to the common law. [Footnotes omitted] Although the Supreme Court has not spoken directly on this matter, the unmistakable adulation bestowed upon this jury function in Witherspoon, supra, leaves little doubt as to the ultimate position of the Court.

---

4. Page 10 of the Sanity Transcript.

'Guided by neither rule nor standard, "free to select or reject as it [sees] fit," a jury that must choose between life imprisonment and capital punishment can do little more—and must do nothing less —than express the conscience of the community on the ultimate question of life or death.' This court has discovered not one successful attack upon the discretion allowed the jury in this context. Perhaps this is because it is neither desirable nor feasible to postulate a specific standard to so control the jury. It is axiomatic that the line between contemporary community values and the penal system is filled by the jury's being allowed to be reflective of prevailing social thought. To assert that the adoption of rigid guidelines seeking to control the jury in this respect, thereby substituting merciless standards for present day flexibility, is compelled by due process is clearly untenable."

See also McGautha v. California, 401 U.S. 1454, 91 S.Ct. 1454, 28 L.Ed.2d 711; State v. Kelbach, 23 Utah 2d 231, 461 P.2d 297 (1969); Bean v. State, Nev., 465 P.2d 133 (1970); People v. Pike, 71 Cal.2d 595, 78 Cal.Rptr. 672, 455 P.2d 776 (1969); People v. McGautha, 70 Cal.2d 770, 76 Cal.Rptr. 434, 452 P.2d 650 (1969); Sims v. Eyman, 405 F.2d 439 (9th Cir. 1969).

■ The defendant further alleges under this proposition that juries in Oklahoma discriminate on grounds of race in capital sentencing for the crimes of Murder and Rape. The Court notes that the defendant does not cite any statistical data to support this assertion that such discrimination exists. This Court refuted this argument in Gaddis v. Page, Okl.Cr., 455 P.2d 699, wherein we took notice of this Court affirming the judgment and sentence assessing the death penalty in Koonce v. State, Okl.Cr., 456 P.2d 549. We thus find this proposition to be without merit.

■ The defendant's next proposition of error states that the defendant's rights under the due process clause of the Fourteenth and Fifth Amendments were violated in that the jury, which pronounced the guilt, simultaneously sentenced him to death pursuant to Oklahoma's single-verdict procedure. He asserts that the only manner in which to introduce evidence relating to his background and character for the jury's consideration on the question of penalty was by waiving his constitutional privilege against self-incrimination and prejudicing his trial on the guilt issue. He maintains that he should have been given a two-stage proceeding, the first as to guilt, and the second as to punishment, although he made no such request at the time of trial.

■ This is a novel allegation of error in that if the trial court had conducted a two-stage proceeding, it would have been error. This Court has held in Moore v. State, Okl.Cr., 462 P.2d 286, wherein we stated in Footnote One:

"We would, however, advise the trial courts that in a proceeding where the defendant is charged with a felony, first offense, and there is no statutory authority for conducting a two-stage proceeding and absent statutory authority for conducting a two-stage proceeding, this practice should not be followed."

See also Ferrell v. State, Okl.Cr., 475 P.2d 825. We, therefore, are of the opinion, that this proposition is without merit.

■ The defendant's final proposition alleges that a sentence of death constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States. In support of this proposition he presents five arguments. We note that he does not support these arguments with citations of authority.

We have carefully examined each of these final arguments and find nothing new therein to support his proposition that the death penalty is cruel and unusual punishment. We have previously held in Gaddis v. Page, supra, that the imposition of the death penalty is not cruel and unusual punishment. (See 24B C.J.S. Criminal Law § 1978, p. 555.) We are of the opinion

that the defendant's last proposition is without merit.

In conclusion, we observe that the evidence amply supports the verdict of the jury. We specifically note that this has been one of the more ghastly and inhumane crimes to be heard by this Court. The record is free of any error which would justify modification or reversal, notwithstanding the verdict of death, and for those reasons, the judgment and sentence appealed from is affirmed.

The date originally set for the execution of the defendant, Michael Wayne Watts, having passed, it is ordered, adjudged, and decreed by this Court that the judgment and sentence of the District Court of Oklahoma County, Case No. 35535, be carried out by the electrocution of Michael Wayne Watts, by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, the 22nd day of October, 1971.

BRETT, J., concurs.

NIX, J., not participating.