**Floyd EDWARDS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17698.**

Court of Criminal Appeals of Oklahoma.

March 27, 1973.

Patrick D. Sullivan, Duncan, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Floyd Edwards, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Stephens County, Case No. CRF–71–196, for the crime of Burglary in the Second Degree. He was sentenced to serve a term of two (2) years in the state penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

Briefly stated, the facts are that at the trial, William Bruce testified that the defendant came by the cafe he operated in Duncan around 8:00 p. m. on December 13, 1971, looking for Mr. Anderson. Bruce said he had not seen Mr. Anderson and asked the defendant what he wanted. The defendant asked for something to eat and Bruce stated that the cafe was closed but he would fix him something. The defendant said never mind and then left the cafe. Bruce left the cafe at approximately 8:05 p. m. and returned around 8:20 p. m. to pick up some garbage scraps he had forgotten. Bruce testified that at his arrival he saw the defendant driving from the cafe, but upon entering the cafe he did not find anything missing. Bruce further testified that he was trying to get home before 8:30 p. m. because the ball game started at that time. Later, Bruce was advised by some friends that the back door to the cafe was open. He returned to the cafe to find the glass in the door broken and the cash register missing. He called the sheriff and advised him that he wanted to file a complaint against the defendant.

Billy West, who lived approximately 175 feet south from the cafe, testified that he

first saw the defendant driving north on 4th street in Duncan shortly before 9:00 p. m. because he was trying to get home before the football game started. After the game had started, he looked out of his window and observed the defendant get into his car parked at the cafe and drive off. West testified that he did not see the defendant carrying anything at that time. Approximately five or ten minutes after the defendant had driven from the cafe, West saw William Bruce approaching the cafe. West left his house and walked over to the cafe, spoke briefly to Bruce, and observed that the screen on the screen door had been cut. On cross-examination West testified that he was not sure that the ball game started at 9:00 p. m. and that it was possible that the game could have started at 8:30 p. m.

Sheriff Dan Benson testified that he received a phone call from William Bruce on the night of December 13, 1971. Bruce told him that his cafe had been burglarized and wanted to sign a complaint against the defendant. Sheriff Benson proceeded to the 81 Motel to talk to the defendant concerning the burglary. Upon entering the defendant's motel room, Sheriff Benson told the defendant that he would like to talk to him about a break-in of a little cafe in Duncan. The defendant replied that he had not broken into any cafe. He got out of bed with all of his clothes on except his shoes, changed clothes, and agreed to go with Sheriff Benson. The defendant then asked Sheriff Benson to take him by Mr. Anderson's house. At Mr. Anderson's house, the defendant began conversing with Mr. Anderson while Sheriff Benson visited with Mrs. Anderson in the same room. Sheriff Benson testified that the only conversation that he heard was Mr. Anderson telling the defendant that he had sold or leased the cafe to Mr. Bruce and that he did not own it. Sheriff Benson further testified that he did not advise the defendant of his constitutional rights until he placed the defendant in the county jail, after the defendant's conversation with Mr. Anderson.

James Turner, investigator for the District Attorney's Office, testified that on the morning of December 14, 1971, the cash register was found in a portion of a storage building that the defendant had rented in the past to store his equipment.

Alva Smith, lessee of the storage building where the cash register was found, testified that the defendant has used that portion of the building previously to store his equipment, that the defendant had some equipment stored in that portion on December 14, 1971, and that at the day of trial, the defendant still had some equipment stored in that portion of the building.

Raymond Anderson, owner of the cash register, testified that on the night of December 13, 1971, the defendant, whom he had known for about fifteen or twenty years, and Sheriff Benson, came by his house. Mr. Anderson testified as follows concerning his conversation with the defendant:

"Q. All right, sir, relate what you recall of that conversation being between you and Floyd Edwards on the night of December 13, 1971?

"A. When they came in the house, he said, 'they got me for breaking in, accuse me of breaking in, and getting the cash register out of your place over there'. I said, 'they did'. I don't really remember exactly what he said, but I told him all I wanted was my cash register back.

"Q. What did he say?

"A. He asked me if I got another old register would it be all right and I said, 'no, I want my register back'.

"Q. Do you recall any other thing he said?

"BY MR. SULLIVAN: Your Honor, I do have a continuing objection to all of this line of questioning, do I not?

"BY THE COURT: Yes, sir."

As the first proposition, defendant urges that the trial court erred in admitting into evidence the testimony of the complaining witness, Raymond Anderson, wherein the

said Raymond Anderson related a conversation between him and the defendant, which conversation took place in the presence of the arresting officer after the defendant had been taken into custody and placed under arrest but before the defendant had been advised of his constitutional rights. The defendant contends that the rules of law as decided in the case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are applicable to the instant case. We find that this contention is without merit.

In Montgomery v. State, Okl.Cr., 447 P. 2d 469 (1968), the testimony of four different police officers concerning purported admissions made by the defendant were at issue. The defendant argued that he was not properly advised of his rights before any questions were offered him. In noting that the defendant's statements did not result from interrogation, but were voluntarily uttered because of defendant's regrets at what he had done, this Court said:

"The U.S. Supreme Court did not hold in the Miranda decision that voluntary statements, made by an accused in custody, are inadmissible. Instead, that decision holds that voluntary statements of an accused in custody may be admissible into evidence, under circumstances shown to be free of coercion, and especially when such statements were truly voluntarily made, as in this case."

In a somewhat similar situation, absent that the defendant in the instant case was in custody, Griffin v. State, Okl.Cr., 453 P.2d 278 (1969), the defendant was convicted of grand larceny after former conviction of a felony. The defendant was observed stuffing money in his pocket and leaving the site of a cash register in a grocery store. The defendant was forced to the ground by store employees while attempting to leave the store and the defendant said that if they would let him up, he would give them back their money. The defendant claimed error in allowing into evidence testimony as to the statement made by the defendant, citing *Miranda,* supra. This Court said:

"It is apparent that Miranda v. Arizona, supra, is not applicable in the instant case, as Miranda was concerned with the admissibility of a confession made in an in-custody interrogation without benefit of counsel.

"In the instant case [Griffin], there was no arrest or taking of the accused to the police station where a confession was made. Here, the defendant made his statement spontaneously and at the scene of the crime. There was no demand for an explanation or questioning made by the employees who detained the defendant. Rather, the statement was made voluntarily and without solicitation."

We held in *Griffin,* supra, that the trial court was not in error by admitting into evidence testimony as to the statement made by the defendant when he was apprehended in leaving the scene of the crime.

Furthermore, in Watts v. State, Okl.Cr., 487 P.2d 981 (1971), we stated:

"This Court has previously held that there is a distinction between voluntary statements and statements adduced from interrogation. In the case of Lung v. State, Okl.Cr., 420 P.2d 158, we stated in the Fifth paragraph of the Syllabus:

"Volunteered statements of any kind are not barred by the Fifth Amendment, nor their admissibility affected."

The statement complained of in the instant case was not the result of police interrogation, but was freely stated by the defendant to Mr. Anderson. There is no evidence in the record to indicate that the defendant was coerced into talking with Mr. Anderson. Quite the contrary, the defendant requested Sheriff Benson to take him by Mr. Anderson's house and the conversation with him was clearly voluntary. Although the defendant was "otherwise deprived of his freedom of action in any significant way", he was not subjected to questioning or interrogation at Mr. Ander-

son's house. *Miranda* is simply not applicable in the instant case. As we stated in Johnson v. State, Okl.Cr., 448 P.2d 266 (1968), quoting from Schaumberg v. State of Nevada, 83 Nev. 372, 432 P.2d 500 (1967):

> "The thrust of the [Miranda] decision was aimed against the 'potentiality for compulsion' * * * found in custodial interrogation initiated by police officers."

 Defendant lastly contends that the evidence is insufficient to support the verdict. Defendant argues that the trial court erred in not sustaining his demurrer to the evidence and his motion for directed verdict. We cannot agree with the defendant's final contention. Although the evidence relied on in the instant case was circumstantial, we have consistently held that where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. See Cagle v. State, Okl.Cr., 507 P.2d 573 (1973); Shoemaker v. State, Okl.Cr., 479 P.2d 621 (1971).

The defendant lends much credence to the discrepancy in the testimony of West and Bruce concerning the exact time that the ball game started in urging that the evidence was insufficient to sustain the verdict. Although the evidence on this point is conflicting, we have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence, and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. See Wilkerson v. State, Okl.Cr., 489 P.2d 1098 (1971); Wilson v. State, Okl.Cr., 437 P.2d 467 (1968); and Jones v. State, Okl.Cr., 468 P.2d 805 (1970). We therefore hold that

defendant's second contention is without merit.

For all of the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BUSSEY and BRETT, JJ., concur.