The STATE of Utah, Plaintiff and Respondent,

v.

Miguel GAXIOLA, Defendant and Appellant.

No. 14069.

Supreme Court of Utah.

June 1, 1976.

---

F. John Hill and Stephen R. McCaughey, of Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., R. Paul Van Dam, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

On appeal is a jury verdict convicting one of the defendants of murder in the second degree. Both defendants were ably represented. We affirm.

Defendant Gaxiola and Isaac Leyvas were charged with murder in the first degree. Upon trial before a jury, Leyvas was acquitted, but Gaxiola was convicted of murder in the second degree. Gaxiola appeals.

The accused and the victim were inmates at Utah State Prison. The victim was Lalo Trujillo, who died following the infliction of ten stab wounds by four different weapons. The evidence indicated the wounds from which the victim died, were caused by a knife which was identified as the one wielded by defendant.

On appeal defendant contends he was denied a fair trial, because of the refusal of the trial court to grant his motion to sever. In his motion, defendant claimed the defenses to be asserted, by each defendant, were antagonistic and inconsistent: further that Gaxiola would be put in the position of having to defend not only against the State, but also against his codefendant. Gaxiola renewed his motion after the opening statements, and several times during the course of the trial. All motions were denied.

Leyvas denied any involvement in the crime. Gaxiola admitted stabbing the victim; but claimed he perpetrated the crime in defense of a fellow inmate, Gilbert Rodriquez, who was being attacked by Trujillo. Gaxiola further proferred extensive evidence to show he was in fear of imminent death, by direction of the Mexican Mafia, a prison organization located in California penal institutions; that he had been threatened with a knife, by Trujillo, in an incident occurring earlier in the afternoon.

The asserted conflict in defenses, between Gaxiola and Leyvas, arose because of the testimony of Gilbert Rodriquez, who was granted immunity. Rodriquez testified he was attacked by Trujillo, who was a large man and a skillful boxer; that Gaxiola appeared on the scene, joined the affray, ultimately stabbing Trujillo. Rodriquez said Gaxiola then withdrew from the scene; Leyvas appeared and also stabbed Trujillo.

Leyvas' defense counsel, in an able cross-examination, discredited the testimony in

regard to the participation of Leyvas. Gaxiola urges here the effect of destroying the credibility of Rodriquez seriously undermined his claim of defense of Rodriquez, thus denying him a fair trial.

■■■ Section 77–31–6, U.C.A.1953, provides when two or more defendants are jointly charged with an offense, they shall be tried jointly, unless the court in its discretion orders separate trials. Since a demand for severance is not a matter of right, it must appear the trial court had before it the facts, which would indicate defendant would be unduly prejudiced before this court can hold there has been an abuse of discretion. The question of abuse of discretion arises, if at all, at the time of the ruling upon the motion for separate trials.[1]

■■■ At the time of the motion to sever, there were no affidavits to establish that the defenses of the two accused were antagonistic, or conflicting, and there is an insufficient evidentiary basis to hold the trial court abused its discretion in denying the motion. However, the motion was renewed, a mistrial was sought on the ground of prejudicial error; therefore, this court may survey the record to determine whether prejudicial error occurred during the trial based on the same grounds.[2] The record does not reveal the required opposing hostility in the defenses, to support severance. The defendants here did not protest innocence while accusing the other.[3] When the testimony of the numerous other witnesses concerning the incident is considered, the effect of undermining the credibility of Rodriquez, in regard to Gaxiola's defense, must be deemed negligible and not to constitute denial of a fair trial.

■■■ Defendant further contends the denial of his motion for a mistrial based on prosecutorial misconduct constituted prejudicial error. The claim is predicated on statements of the prosecutor, during closing argument. The prosecutor reviewed the evidence concerning defendant's background and mental condition, and then admonished the jury that such evidence constituted insufficient grounds to kill another person. He said it was his opinion he would rather the jury turned defendant loose "because a manslaughter conviction, in this case for Mike Gaxiola, is nothing." The prosecutor further stated that a conviction for manslaughter would give the inmates of the prison the idea they could kill with impunity, so long as they had similar backgrounds and lived in fear of their lives.

The comments of the prosecutor when placed within the context of his entire argument fall within the ambit of permitted argument. The prosecutor was merely urging the jury to make a thorough analysis of the facts and the man, and particularly that the attack on Trujillo had no relationship to defendant's background.

In their arguments to the jury, counsel for both sides have considerable latitude and may discuss fully from their viewpoints the evidence; inferences and deductions arising therefrom.[4] The remarks of the prosecutor were in response to the strong advocacy of defense counsel in his closing argument and were within the range of reasonable inferences which could be drawn from the evidence. Furthermore, it was within the sound discretion of the trial court on the motion for a new trial as to whether the remarks had the effect of creating an improper influence on the verdict. From the record there appears no abuse of discretion, and substantial justice appears to have been done.

■■■ A further contention of defendant asserts he was entitled to have the prose-

1. *State v. Miller*, 111 Utah 255, 177 P.2d 727 (1947).

2. *State v. Rivenburgh*, 11 Utah 2d 95, 109, 355 P.2d 689 (1960).

3. *State v. Rivenburgh*, note 2 supra; *People v. Braune*, 363 Ill. 551, 2 N.E.2d 839 (1936).

4. *State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422 (1973).

cution of this action dismissed on the ground county and State officials had discouraged material witnesses, from talking with defense counsel. This censurable situation arose because of the refusal of prison personnel to talk with defense counsel. It was rectified by court order prior to trial. Defendant acknowledges the cooperation of the courts, but claims the inordinate time lapse between the incident and the interviews made it impossible to cure the prejudicial effect. No facts are cited to substantiate his argument. He did have complete access to the interviews of the witnesses conducted by the prosecution, which were taken directly after the incident.

Defendant assigns additional error protesting the trial court should have granted his motion for a new trial, on the ground the verdict was contrary to law, or the evidence (77-38-3(6), U.C.A., 1953). He specifically asserts the evidence in the instant case does not support a verdict for second-degree murder—the jury should have convicted him of first-degree murder or manslaughter.

Section 76-5-202, U.C.A.1953, as enacted in 1973, provides:

> (1) Criminal homicide constitutes murder in the first degree if under circumstances not constituting manslaughter, the actor intentionally or knowingly causes the death of another under any of the following circumstances:
>
> (a) The homicide was committed by a convict under sentence of imprisonment . . . ..

The relevant provisions of 76-5-203, U.C.A.1953, as enacted 1973, state:

> (1) Criminal homicide constitutes murder in the second degree if, under circumstances not amounting to murder in the first degree or manslaughter, the actor:
>
> (a) Intentionally or knowingly causes the death of another; or,

> (b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another; or . . .

The contention is, since it was undisputed he was a convict, under a sentence of imprisonment, and this fact constitutes the only distinction between 76-5-202(1) (a) (first-degree murder) and 76-5-203 (1)(a) (second-degree murder); the verdict cannot be sustained. He claims the verdict cannot be sustained under 76-5-203 (1)(b) because the brutality of the murder was inconsistent with a finding defendant intended only to cause serious bodily injury. 76-1-601(9), U.C.A.1953, as enacted 1973, defines "serious bodily injury" as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ or creates a substantial risk of death."

 Dr. Moore, a pathologist, performed a postmortem examination on the victim. He testified the cause of death was multiple stab wounds (ten), inflicted by four weapons. He characterized the most serious wounds as numbers 7, 6, 5, 1 and 2. He stated that numbers 3, 4, 8, 9 and 10 were not lethal. The most severe wound was number seven, the weapon penetrating the chest cavity cutting the pulmonary artery. Wounds number 1, 6 and 7 appeared to be inflicted by Exhibit 23, a knife, which the jury could have reasonably found to be the weapon used by defendant. There was no evidence to indicate the defendant used more than one knife on the victim. Under these circumstances, there was sufficient evidence from which the jury might have found defendant intended to cause serious bodily injury without an intention to kill; the trial court did not err by refusing to grant a new trial.[5]

 The final assignment of error is declared to be Instruction 27a. After de-

---

5. *State v. Be Bee*, 113 Utah 398, 195 P.2d 746 (1948) ; *State v. Mills*, 530 P.2d 1272 (Utah 1975).

liberating in excess of nine hours the jury returned and requested clarification of the terms "extreme mental or emotional disturbance" contained in the manslaughter instructions. The trial court instructed the jurors to give the terms the meaning they would give them in common everyday use. In 27a "extreme," "mental," and "emotional" were defined as in the dictionary. Defendant excepted, urging the words should be construed together. Here the contention is that "extreme mental or emotional disturbance" is a term of art, which derives its meaning from usage and not from the individual words. It is claimed the definitions served no useful purpose and obfuscated the meaning of the term.

Section 76–5–205, U.C.A.1953, as enacted 1973, provides:

(1) Criminal homicide constitutes manslaughter if the actor:

\* \* \* \* \* \*

(b) Cause the death of another under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse;

Instruction 27 incorporated the language of subsection (b) of 76–5–205.

Section 76–1–106 provides that all provisions of the code shall be construed according to the fair import of their terms. The trial court so instructed the jury. The contention the terms were words of art is not supported by the commentary of the committee set forth in the Model Penal Code, under Section 201.3, wherein it is stated:

. . . By referring to "extreme mental or emotional disturbance for which there is reasonable explanation or excuse" rather than to provocation, the draft avoids a merely arbitrary limitation on the nature of the antecedent circumstances that may justify a mitigation when the homicidal actor was in great distress.[6]

Instruction 27a defines "extreme" as excessive, or far advanced, or grievous; "mental" as relating to or existing in the mind; and "emotional" as connected with the feelings or passions.

■ A review of the instruction and the law does not reveal the alleged confusion and prejudice asserted by defendant. This court must review alleged error in conformity with 77–42–1, U.C.A.1953 and may not interfere with a jury verdict, unless upon review of the entire record, there emerges error of sufficient gravity to indicate defendants rights were prejudiced in some substantial manner. There must be a reasonable probability that there would have been a result more favorable to appellant in the absence of error.[7]

The record in the instant case includes ten volumes of the trial transcript. During any such protracted litigation, there are numerous opportunities to allege error; however, a review of the entire record indicates defendant had a fair trial. His guilt, of second-degree murder, was legally proved by the evidence.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

---

6. Tentative Draft, No. 9, p. 46, A.L.I., Model Penal Code.

7. *State v. Kelbach*, 23 Utah 2d 231, 238, 461 P.2d 297 (1969).